
**O'MALLEY et al. v. CHRYSLER
CORPORATION.**

**No. 9254.**

Circuit Court of Appeals, Seventh Circuit.
Feb. 19, 1947.

SPARKS, Circuit Judge, dissenting.

———◆———

George B. Christensen and Thomas S.
Tyler, both of Chicago, Ill., and Theodore
Iserman, of New York City, for appellant.

Edwin A. Halligan and Samuel M. Lan-
off, both of Chicago, Ill., for appellee.

Before SPARKS, MAJOR, and MIN-
TON, Circuit Judges.

MINTON, Circuit Judge.

The plaintiffs-appellees filed an action
against the defendant-appellant in the Dis-
trict Court for the Northern District of
Illinois in what is commonly called a portal
to portal action. Under discovery proce-
dure the plaintiffs, some two hundred in
number, obtained an order from the Dis-
trict Court on May 24, 1946 requiring the
defendant to compile, compute, and furn-
ish to the plaintiffs within ninety days cer-
tain information as to each of the plaintiffs.
From its records the defendant furnished
the requested information as to each plain-
tiff as follows: the time clocked in and
out each day; the amount of time for
which he was paid; the rate of pay; the
amount of time he was shown by clock
records to be upon the defendant's premises
over and above the time paid for; and the
total amount of overtime paid to him.

On November 4, 1946, the court entered
the following order on motion of the plain-
tiffs:

"IT IS ORDERED that the defendant
compile, compute and furnish to the plain-
tiffs on or before 45 days, the total com-
pilation and computation for each and for
all of the plaintiffs of hours over 40 hours;

total overtime paid, and total overtime unpaid on the basis of time and one-half over 40 hours per workweek for each and all of said plaintiffs.".

The defendant has furnished all of the information requested except a computation of the time, at the rate of time and one-half, spent by each plaintiff on the premises between the time he clocked in and the time he commenced work, and between the time he ceased work and the time he clocked out. By its order the court placed the burden of this computation on the defendant. From this order the defendant has appealed on the theory that said order was an interlocutory mandatory injunction and appealable under Sec. 129 of the Judicial Code.[1] It is frankly admitted that the order was not final within the meaning of Sec. 128 of the Code, 28 U.S. C.A. § 225. Was it an interlocutory mandatory injunction? That is the sole question. If it is, the question presented on the court's order is before us. If it is not, we have no jurisdiction.

We start with the proposition that mandatory injunctions are rarely issued and interlocutory mandatory injunctions are even more rarely issued, and neither except upon the clearest equitable grounds. 43 C. J. S. Injunctions, § 5, pp. 410, 411, 412; 28 Am.Jur., Injunctions, Sec. 20; High on Injunctions (3rd ed.) Sec. 2.

The Federal Rules of Civil Procedure, rules 34–36, 28 U.S.C.A. following section 723c, provide not only for discovery but for pre-trial conference. (Rule 16.) Under these rules we think the court has wide discretion and power to advance the cause and simplify the procedure before the cause is presented to the jury. The District Court had the power to issue such orders as in the exercise of a sound discretion would advance and simplify the cause before trial. If it abused that discretion in making such orders, it is conceded that no appeal would lie under Sec. 128. There would be nothing final about such orders.

In our opinion, the order made in the instant case was such an order. It was only a step in the orderly procedure of the case. The District Court was exercising its pre-trial powers. It would, in our opinion, have had the *power* to make the order it made irrespective of the Federal Rules of Civil Procedure.

We do not attempt at this time to pass upon the fairness of the order. The only thing the District Court asked of the defendant was a rather burdensome computation which it is obvious the plaintiffs were as competent to make as the defendant, although probably not as well equipped. Furthermore, the computation was to aid the plaintiffs in the discharge of their burden. The most that can be said is that the District Court put the heavy burden of computation where it should not have been. It is difficult to see how at this stage of the proceeding that could be prejudicial error. It does not follow that after the computations were made they would be admissible in evidence simply because made in compliance with the order in question. The admissibility of any or all computations was for the court upon the trial. We do not agree with the defendant that the computations, if made under this order, would be an admission of liability of the defendant for all or any part of said computations. If any or all of the computations were admitted on the trial, the fairness thereof could be reserved like any other claimed error until a final determination of the cause. If the defendant thought the order so grossly in violation of its fundamental rights, it could have disobeyed the order, been adjudged in contempt, and then appealed from such judgment, as was done in the recent case of Hickman v. Taylor, 67 S.Ct. 385. See also Alexander v. United States, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686.

In the instant case the court did not purport to be using its extraordinary powers as a chancellor to issue the rare interlocutory mandatory injunction. Nothing had been done here that the court is mandatorily ordering to be undone. There was no showing or pretense of showing by the plaintiffs of any equitable ground as a basis for said order. The court was not moved

---

[1] 28 U.S.C.A. § 227.

to enter the order on the consideration of any equitable principles. It was using only such powers as a court of law has to rule in the orderly progress of a case. The mere fact that the court orders something to be done in the progress of a case does not make that order a mandatory injunction. If the court in the midst of a trial in which long computations become necessary should stop the trial and order one of the parties to make the computations and return them into court by a certain time, would anyone suppose that that was an interlocutory mandatory injunction, even though the party had been ordered to do it, and that appeal would immediately lie therefrom? All orders of court are mandatory in the sense that they are to be obeyed; but all orders of court are not mandatory injunctions. There must be more than an order. The order must be based on equitable grounds to justify the use of the extraordinary powers of equity, such, by way of illustration, as irreparable damages, no remedy at law, or that acts should be undone to restore the status quo. 28 Am.Jur., Injunctions, Sec. 20.

The defendant relies upon Red Star Laboratories Co. v. Pabst, 7 Cir., 100 F.2d 1, decided by this court, and Ettelson v. Metro. Ins. Co., 317 U. S. 188, 63 S.Ct. 163, 87 L.Ed. 176. In the first case Red Star brought a creditor's bill against Pabst and had a receiver appointed. The debtor had certain insurance policies in which his wife was named as beneficiary without the right of change. In this proceeding the court without a hearing ordered the insurance companies to change the beneficiaries in all of the policies from the wife to the receiver and directed the receiver to notify the insurance companies accordingly. This was no ordinary step in the progress of the trial of a lawsuit. As this Court pointed out (100 F.2d p. 4) "The effect of the order was to alter rather than preserve the status quo" which is the most characteristic mark of a mandatory injunction. This was an equity case, and the order purported to settle the rights of the parties under the policies.

In the Ettelson case actions at law were filed to recover on certain life insurance policies. The defendant by counterclaim alleged that the policies were obtained by the fraud of the insured and were void therefor, and prayed that the policies be decreed void and the plaintiff be enjoined from further prosecuting the action at law. The trial court ordered the counterclaim to be heard in equity and to be disposed of prior to the trial of the cause of action at law set forth in the complaint. Was this an injunction appealable under Sec. 129? The court held that it was. But it was not a mandatory injunction. The court said (pages 191, 192 of 317 U.S. 63 S.Ct. 163, 164, 87 L.Ed. 176):

"* * * it may, in practical effect, terminate that action. It is as effective in these respects as an injunction issued by a chancellor. * * * The relief afforded by § 129 is not restricted by the terminology used. The statute looks to the substantial effect of the order made."

In this case the substantial effect of that order, if sustained, as the court said, would end the lawsuit. No such consequence would follow the enforcement of the instant order. If a procedural error was committed, that was prejudicial, the rights of the defendant were preserved. The order in the instant case was intended to be in *aid of the determination* of the issues set up in the complaint, while the orders in the Red Star and Ettelson cases were in themselves *determinative*.

The Supreme Court of California in Union Oil Co. of California v. Reconstruction Oil Co., 4 Cal.2d 541, 51 P.2d 81, 83, has held in a case that cannot be distinguished from the instant case that such an order made in the progress of the trial is not a mandatory injunction and is not appealable. In that case, the plaintiff had brought suit to enjoin the defendants from taking oil from the plaintiff's well through their well on adjoining land by "whipstocking," that is, by sinking the defendants' well so that the pipe went down to a certain depth on the defendants' land and then bent toward and went under the plaintiff's land. The court by an order appointed experts to make an examination as to the facts preparatory to testifying, and or-

dered the defendants to permit the examination without interference. This order and a similar one were appealed from. The court in a very clear opinion held that the orders were important and essential in the correct determination of the main issue, that they were simply a step in the procedure to that end, and that they were the exercise of a power inherent in the court to aid the plaintiff in producing the evidence necessary to sustain its action. The court held that the orders were neither final orders nor mandatory injunctions.

The order attempted to be appealed from here was not an interlocutory mandatory injunction and was not appealable under Sec. 129. It is admittedly not a final order under Sec. 128. We have no jurisdiction. The order entered in this Court staying the proceedings in the District Court is vacated, and the appeal is dismissed.

SPARKS, Circuit Judge, dissenting.

This is an appeal from an interlocutory order, taken under section 129 of the Judicial Code, 28 U.S.C.A. § 227. The case arises under the Fair Labor Standards Act, 29 U.S.C.A. section 201 et seq., as construed in Anderson, et al. v. Mt. Clemens Pottery Company, 66 S.Ct. 1187.

The main action was brought by about two hundred plaintiffs. Their amended complaint alleges that they were employed by defendant during the war as armed guards at its plant, and that defendant failed to pay them for such services for pre-reporting and check-in time, for time in traveling to and from their post of duty, and for waiting time. Defendant's answer alleges that it paid plaintiffs in full for all working time, and denies any liability. Defendant demanded a jury trial and the cause is set for trial on February 17, 1947.

Under discovery procedure, plaintiffs obtained an order of court on May 24, 1946, requiring defendant to furnish them information as to the time actually worked by the respective plaintiffs and time spent by them on defendant's premises which was not paid for as working time. By such order the defendant was required to "compile, compute and furnish to the plaintiffs on or before ninety days, the following information concerning each of the plaintiffs:

"1. Period of employment;

"2. Base Pay;

"3. Actual hours as shown by the time clock records for each payroll period;

"4. Total hours for which compensated for each payroll period;

"5. Total wages paid for each payroll period;

"6. Time clocked 'in' daily, as shown by the time cards, and the time of arrival at post of duty, as shown by the personnel or other records for each payroll period;

"7. The number of hours or fractional hours between the time clocked 'in' as shown by the time cards, and the time of arrival at post of duty, as shown by the personnel or other records for each payroll period;

"8. Total amount of wages due for said time on basis of time and a half of the base wage for each payroll period;

"9. Time of leaving post of duty, as shown by personnel or other records, and time clocked 'out' daily, as shown by the time clock records for each payroll period;

"10. The number of hours or fractional hours between the time of leaving the post of duty, as shown by the personnel or other records, and the time clocked 'out' daily, as shown by the time clock records for each payroll period;

"11. Total amount of wages due for said time on the basis of time and a half of the base wage for said payroll period;".

Defendant informed plaintiffs' attorney and the court that it had no objections whatever to furnishing plaintiffs any and all information relative to the matters in issue which its records might disclose, and offered to submit its books for verification. It thereupon furnished plaintiffs, in tabular form, complete and accurate information, which was contained in its records, relative to the information sought by the order. This was a huge and expensive task, and a sample of the tabulations so furnished with respect to each of the ap-

proximately two hundred plaintiffs is shown in the margin.[1]

Thereupon plaintiffs' counsel presented a petition to the District Court to require the defendant to give further information. It was therein alleged that defendant had furnished the information required by the order of May 24, "except that it did not furnish to the plaintiffs the total compilation for each and for all of the plaintiffs for hours over 40 hours; total overtime paid; total overtime unpaid on the basis of time and one-half over 40 hours per work week."

Over defendant's objection, the District Court then issued the following order:

"It is ordered that the defendant compile, compute and furnish to the plaintiffs on or before 45 days, the total compilation and computation for each and for all of the plaintiffs of hours over 40 hours; total overtime paid, and total overtime unpaid on the basis of time and one-half over 40 hours per workweek for each and all of said plaintiffs."

Defendant then filed its petition to vacate entirely or, in the alternative, to clarify the last order. This petition declared that it had furnished computations for each and all the plaintiffs "showing the time each of them punched in on the time clocks prior to commencement of work and punched out subsequent to the ending of work and further showing for each of them by payroll periods the total overtime they were paid, and showing and computing by payroll periods the hours and minutes, if any, in excess of forty hours per week represented by the total time between the punch-in and punch-out times above referred to."

The grounds stated for this petition were that the order of November 4 did not call for the production of any books, records or documents required to be kept by the defendant under the provisions of the Fair Labor Standards Act, and that all such information had theretofore been furnished. The petition further alleged that such order was not based upon or within any of the discovery provisions of the Federal

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|
| date | "in" ring | arrival at post | left post | "out" ring | regular hours paid | "O. T." hours paid | rate | gross amount paid | minutes prior to shift start | minutes after shift end |
| 6-23 | 6:00 | | | 2:01 | 8 | | | | | 1 |
| 6-24 | 5:53 | | | 2:00 | 8 | | | | 7 | |
| 6-25 | 5:51 | | | 2:01 | 8 | | | 30.08 | 9 | 1 |
| 6-26 | 5:36 | | | 2:02 | 8 | | | | 24 | 2 |
| Total | | | | | 32 | | .94 | 30.08 | 40 | 4 |
| 6-27 | 5:50 | | | 2:00 | 8 | | | | 10 | |
| 6-28 | 6:03 | | | 2:01 | 7³ | | | | 12 | 1 |
| 6-29 | | | | | | | | | | |
| 6-30 | 5:44 | | | 2:00 | 8 | | | | 16 | |
| 7-1 | 5:34 | | | 2:01 | 8 | | | 44.89 | 26 | 1 |
| 7-2 | 5:46 | | | 2:00 | 8 | | x | 3.64 | 14 | |
| 7-3 | 5:37 | | | 2:02 | 8 | | | | 23 | 2 |
| Total | | | | | 47³ | 3⅞ | .94 | 48.53 | 101 | 4 |

Rules in that it did not call for the production of any documents or records in the possession of defendant but required the defendant to make calculations and perform services for the plaintiffs and their attorneys which the court had no lawful power or jurisdiction to require defendant to do. The petition further alleged that the order of November 4, assumed defendant's violation of the law and pre-empted the jury's function in its provision that defendant compute the "total overtime unpaid on the basis of time and one-half over 40 hours per workweek for each and all of said plaintiffs," whereas defendant by its answer had asserted there was no such overtime, and was entitled to a jury trial thereon.

In the event the order was not vacated, defendant moved for clarification on the grounds that it would be impossible to comply unless, and until, some formula in accordance with the law and the evidence was laid down by which accountants could calculate what amounts of time spent by each of the plaintiffs in each of the weeks in question were to be deemed working time and thereby furnish the basis for the calculation required in the order.

The petition was denied by the District Court on December 3, 1946, at which time the following colloquy occurred:

"By the Court: The court is not acting merely on the right to produce papers or to inspect papers. The court is exercising, and intends to exercise the powers which it has to compel counsel to prepare matters so that when you come to trial we will not spend an interminable amount of time over things that counsel ought to have agreed to in conference—in conference, pretrial conference. There is no occasion that I should sit down with you and tell you to do this. You are experienced. You know what ought to be done. Now go ahead and do it. Your motion is denied. And what I have said is to be made a part of this record.

"By Mr. Christensen: Now, your Honor, if you will just look at that order, you say I ought to know what should be done.

"By the Court: You do know what is to be done.

"By Mr. Christensen: Your Honor—

"By the Court: You just go and get those facts ready—

"By Mr. Christensen: Your Honor—

"By the Court: (Continuing.) —to present to this court, so that this court doesn't have to spend six months getting them.

"By Mr. Christensen: Your Honor, as I explained before—

"By the Court: Getting them from those sources. There is no necessity for this, and it must be done. They say they must have them before we can adjudicate it. Now, get them. I don't want to spend any more time on this matter. Get them.

"By Mr. Christensen: Your Honor—

"By the Court: Call the next case."

There had been no pretrial conference, nor was there any such conference requested or ordered. No complaint was or is now made that defendant's books were not properly kept in strict compliance with all pertinent regulations of the Administrator of the Wage and Hour Division, as provided in section 11 of the Act, and it is not denied that the tabulations furnished by defendant to plaintiffs furnish all the evidence contained in defendant's books of account, from which the compilation required in the court's last order can be made. But of what aid would this be to the trial court, or to the plaintiffs? It would only show what length of time each and all plaintiffs had been on defendant's premises for which they had not been paid the base wage or for overtime. This, however, is not the proper measure of recovery as enunciated in the Mt. Clemens case, supra. There the Court applied the de minimis rule that unsubstantial and insignificant periods of time spent in preliminary activities need not be included in the statutory work week, and furthermore, it was there said that it would be unfair and impractical to compensate employees for engaging themselves in work, while on the premises, which they were not required to do. The Mt. Clemens case clearly puts the burden upon the employees to prove what they are entitled to, and of course they are entitled to all reasonable inferences where there is uncertainty. However, there is no such uncertainty here. All that the order seems

to require is that defendant shall calculate for plaintiffs, and for the court, from the figures already furnished them by the defendant, the unpaid amounts due them, based on the base rate of pay, including time and one half for overtime in excess of forty hours a week, for all the time spent by them on defendant's premises, regardless of the de minimis rule, or whether during any of such time any plaintiff was engaged in work which he was not required to do, none of which items, if any, are a proper charge against the defendant, as plainly stated in the Mt. Clemens case.

Moreover, since that case places the burden upon plaintiffs of proving their amounts of recovery, if any, it does not appear reasonable that defendant should be compelled to calculate the totals which, apparently, plaintiffs claim are due them, from admittedly full disclosures by defendant of all facts necessary, or required by the Act, from which such totals may be readily ascertained by plaintiffs.

It must be remembered that defendant denies that there is any amount due plaintiffs from it, and it is entitled to have that issue tried. It has demanded a jury for that purpose, and defendant's compliance with this order of the court would be admissible in evidence as an admission by defendant, when in truth and in fact it is nothing of the kind. Plaintiffs' counsel states to us that he will not make use of such argument to the jury. Of course, we have no reason to doubt his word, if he tries the case. We note, however, that when the matter was under discussion before the court, this same counsel for plaintiffs stated:

"The defendant has asked for a jury here. I say that as to each man all this information should go as an exhibit to the jury so that the jury will know the total amount due."

Counsel has apparently changed his mind since then. Under these circumstances we think it should not be put within his power or the power of anyone to use the material here required to be compiled by defendant

for argument before a jury, nor should it be thus submitted without argument.

Alternately, defendant moved the court to clarify the order by issuing some formula in accordance with the law by which, under the evidence, accountants could calculate what amounts of time spent by each plaintiff in each week in issue were to be deemed working time. This is precisely what the Supreme Court did in the Mt. Clemens case [66 S.Ct. 1195] when it reversed and remanded "for the determination of the amount of walking time involved and the amount of preliminary activities performed, giving due consideration to the de minimis doctrine and calculating the resulting damages under the Act." [2]

Plaintiffs contend that the District Court's order of November 4, 1946, is not an injunctional order within the meaning of Section 129 of the Judicial Code, hence not appealable. The order unequivocally commands the performance of a positive act, and that would seem to comply precisely with the elemental definition of a mandatory injunction. See 43 C.J.S. Injunctions, § 5, 409; 32 C.J. 22, and cases there cited. No one denies that a court of equity has jurisdiction in *proper* cases to compel the performance of an act as well as to restrain it; nor is it denied that formerly injunctions were not *ordinarily* issued in actions at law. However, the latter was not always true, and under our present rules there is but one form of action known as "civil action." In such action remedies both at law and in equity are available to parties in the same court and in the same case. Cyc. of Federal Procedure, Vol. 3, section 797; Kansas City, St. Louis & C. R. Co. v. Alton R. Co., 7 Cir., 124 F.2d 780; Ammond v. Pennsylvania R. Co., 6 Cir., 125 F.2d 747, certiorari denied, 316 U.S. 691, 62 S.Ct. 1283, 86 L.Ed. 1762; Grauman v. City Co. of New York, D.C., 31 F.Supp. 172.

In determining whether an order constitutes an injunction under Section 129, the substance of the order is controlling, and whether it was ancillary to a proceeding

---

[2] Upon remand of that case, District Court Judge Picard, on February 8, 69 F.Supp. 710, determined that all time there in issue came under the de minimis rule, and dismissed the cause.

formerly denominated at law or in equity is immaterial. Ettelson v. Metropolitan Life Insurance Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176; Chicago Great Western Ry. Co. v. Beecher, 8 Cir., 150 F.2d 394, certiorari denied, 326 U.S. 781, 66 S.Ct. 339.

Section 129 of the Act, so far as here applicable, is as follows:

"Where, upon a hearing in a district court, or by a judge thereof in vacation, an injunction is granted * * * by an interlocutory order or decree, or an application to dissolve or modify an injunction is refused, * * * an appeal may be taken from such interlocutory order or decree to the circuit court of appeals."

If the order in question is not a mandatory injunction, what is it? And if the court's erroneous refusal to modify it upon defendant's request does not come within the plain literal language of this statute, it would be most difficult to find words in the English language to so express it. Would anyone arrogate to himself the authority to say, from this plain unambiguous language, that Congress intended that it should be construed differently? We are agreed that the order is erroneous, and was improperly entered. We further agree that Judge Barnes placed the burden where it should not have been placed, and that he abused his discretion in issuing the order, yet, my brethren say that defendant has no remedy until it has been found guilty of contempt for disobeying the order. The attorneys on both sides of this case are quite reputable, and it is fair to presume that this section of the statute was enacted for the protection of all clients and their attorneys.

Much is said about the court's inherent power to make such an order, an expression often used but seldom, if ever, defined. However, we find no authority in American jurisprudence for basing inherent or other power of a court upon an abuse of its discretion. Especially is this true where great expense must be incurred by defendant for which probably there can never be any hope of compensation even if defendant should be partially successful in the result of this action. This matter of expense was mentioned at the hearing, when defendant notified the court that defendant had spent ninety days and ten thousand dollars in preparing the two hundred tabulations above referred to. The court's answer was—"I am not at all interested in what it cost. If it cost a hundred thousand dollars that doesn't make the slightest difference to me. I don't want to see you waste your money. But I said I thought they were entitled to certain information in order to prepare their case for trial."

The majority opinion states that "it is conceded that no appeal would lie under Sec. 128" where a court abused its discretion in making an order with the view of advancing a cause and simplifying the procedure. I make no such concession, for that is beside the present issue. As previously stated, this defendant is seeking relief under section 129, from immediate and irreparable damage by reason of an order, in admitted abuse of sound discretion, which order is calculated neither to simplify the procedure nor advance the cause.

Plaintiffs contend that if the order here is a mandatory injunction, then every pretrial order for the production of books and records, answering interrogatories, and the like, would be an appealable order, and this court would be surfeited with appeals, hence they say that this order is not appealable. In this they fail to recognize the difference between those orders and the one now under consideration, which is that the former are expressly provided for by rules or by statute and they follow the accepted course of judicial procedure. The one before us is not one contemplated by any form of pretrial procedure and constitutes a preadjudication of the issue presented by the pleadings.

I am of the further opinion that the order cannot be justified on the theory of obtaining "relatively speedy justice." That principle is to be commended always, but when, as here, such principle conflicts with the most basic principles of our judicial system, it will not be adhered to. Red Star Laboratories Co. v. Pabst, 7 Cir., 100 F.2d 1.

A reading of the order and the colloquy between the court and defendant's counsel is quite convincing that a failure on the part of the defendant to comply with the

order might subject the defendant to a contempt proceeding to which it should not be subjected.

I think the ruling of the District Court, both as to defendant's main motion and its alternative motion, should be reversed and the cause remanded to the District Court for further proceedings.