THE SHELL COMPANY (P. R.) LIMITED, Petitioner, v. DISTRICT COURT OF PUERTO RICO, SAN JUAN SECTION, Respondent; JOSÉ RAMOS, Intervener.

No. 1933. Argued April 1, 1952.—Decided April 30, 1952.

414

*Fernando Ruiz Suria* for petitioner. *Ismael Soldevila* for intervener, plaintiff in the main action.

MR. JUSTICE SNYDER delivered the opinion of the Court.

This case requires us to determine whether the district court abused its discretion in ordering a defendant pursuant to Rule 33 of the Rules of Civil Procedure to answer certain written interrogatories served upon the defendant by the plaintiff, one of its employees, in a wage suit.

On March 2, 1950 José Ramos sued The Shell Company (Porto Rico) Limited for wages in the amount of $8,156.78, plus a similar amount as a penalty, allegedly owed to him by the defendant for extra hours worked by the plaintiff between November 7, 1935 and May 15, 1949 as the chauffeur of a tank-truck used to transport gasoline. Although the answer admits the said employment, it denies that the plaintiff worked the additional hours alleged in the complaint or

that the defendant owes the plaintiff any wages. As special defenses, the defendant alleges (1) prescription for claims for work performed more than two years prior to the date of the complaint under the Portal-to-Portal Act, 29 U.S.C. § 255; (2) prescription for similar claims more than three years old under § 1867(3), Civil Code of Puerto Rico, 1930 ed.; (3) reliance in good faith on regulations and administrative interpretations under 29 U.S.C. §§ 258–59; (4) non-liability for liquidated damages because of its good faith and understanding that it had complied with the Federal Act under 29 U.S.C. § 260; (5) estoppel because the plaintiff had signed certain documents indicating he had no claim against the defendant.

On April 10, 1950 the district court granted the motion of the plaintiff to inspect the pay-rolls and the time cards showing the daily arrivals and departures of the defendant's employees from November 7, 1935 until May 15, 1949. On April 13, 1950 the defendant moved for a similar order, which was granted on April 14, 1950, to inspect "(a) any list, note, annotation or any other writing prepared by the plaintiff and/or by his attorney which the plaintiff proposes to use to prove the allegations of his complaint, (b) any correspondence, circular or any other document in the possession of the plaintiff or of his attorney which the plaintiff proposes to use to prove the allegations of his complaint."

On April 24, 1950 the defendant served 17 written interrogatories which are summarized in the margin.[1] The

---

[1] These interrogatories called for the following information from the plaintiff: (1) his regular hours of work during the period covered by the complaint; (2) his daily arrival and departure times for the said period; (3) the extra hours owed to him and specific information as to what the extra work consisted of for which he was not paid; (4) the name of the defendant's employee who ordered said extra work; (5) the names of the persons to whom the plaintiff normally delivered gasoline; (6) the number of days per week he worked during the said period; (7) the specific amounts paid to him in each case for extra hours worked daily or weekly during the said period; (8) if he worked with fellow-employees during the extra hours, give their names; (9) indicate if he

district court overruled the objections of the plaintiff to these interrogatories and entered an order requiring the plaintiff to answer them. After obtaining a series of extensions of time to answer the defendant's interrogatories, on December 29, 1950 the plaintiff served the defendant with 18 written interrogatories, reading as follows:

"1. What were the regular hours of work of the plaintiff as the defendant's employee during each day of each period of time included in (*a*) to (*o*) of paragraph I of your answer to the complaint in this suit?

"2. What was the time of arrival and of departure of the plaintiff in his work during each day of each period described in question No. 1?

"3. How many extra hours did the plaintiff work as defendant's employee during each of the days of each of those same periods?

"4. What were those extra hours, that is, from what time until what time of each natural day?

---

made any record of the extra hours worked by him, and if so, indicate if it is in the possession of his attorney, and if it is in the possession of another person, give his name and address; (10) state the laws, regulations, decrees or collective bargaining agreements on which he bases his claim; (11) give the names and addresses of the witnesses he proposes to use, indicating if they are relatives of his or of each other, and indicate what he proposes to prove with each witness; (12) indicate the documentary evidence which he proposes to present to prove the allegations of his complaint; (13) indicate if he had made a claim for the extra hours involved herein prior to filing of the complaint, indicating the date, with whom, and the manner in which it was made; (14) indicate what basis he used to conclude that his regular pay per hour was $0.5755, $.75, $0.8125, $0.87½, $0.93¾ and $1.00 during the respective six periods of employment alleged in the complaint; (15) indicate what part, if any, of his regular pay to date he had not received when his employment by the defendant ceased on May 15, 1949, and indicate what other compensation, if any, he received, giving the date thereof; (16) indicate if it is not true that subsequent to May 15, 1949 he signed certain documents listed in the interrogatory indicating he had been paid for all extra hours owed to him. If he admits having signed the documents, but has any objection as to their validity, state what the objection consists of, for example, if he alleges he was coerced or they were obtained fraudulently or any other objection thereto; (17) state if he marked time cards on arrival and departure from work, and if he did, where and in what manner he did so, and if his fellow-employees did the same, and if he signed them and delivered them to an employee of the defendant, giving the latter's name.

"5. Who were the immediate superiors of the plaintiff during each of those periods and what job or position did each of those immediate superiors hold at that time?

"6. From whom did the plaintiff receive or could he receive orders or instructions to perform his duties as defendant's employee during each of the above-mentioned periods; and what job or position did each of the persons who gave or could give said orders or instructions hold?

"7. Indicate the name and address of the purchaser or receiver, as well as the date, place and amount delivered to each purchaser or receiver of gasoline or other products belonging to the defendant and entrusted to the plaintiff to be taken to its destination in the tank-truck in charge of the latter on each day of each of the aforesaid periods.

"8. What was the amount of the regular wages and the amount for each of the extra hours, indicating as to each of the latter the time of commencement and completion, accrued compensation earned, method used to compute said compensation and the work for which it was paid, on each of the days of each of the aforesaid periods?

"9. State whether in the performance of his duties the plaintiff had to work, and if as a matter of fact he did work, during regular or extra hours, by himself or with someone else, assisted by or together with other fellow-workers; and if the last point is answered in the affirmative, state the name and address of each of his fellow-workers, indicating which are still defendant's employees.

"10. Did plaintiff have instructions or was it his custom to file a written or oral report as to the person or persons, if any, who accompanied him or helped him in his work during either regular or extra hours? If the answer is in the affirmative, to whom did he have to submit the report and when and how and where was this report filed? Did the other employees who had the same or analogous work also make a report?

"11. How, by whom, and when were the pay-rolls, registries, and entries of extra hours worked by employees, especially by the plaintiff, prepared and where and in whose possession are said pay-rolls, registries, and entries, and how was payment made on the basis of the pay-rolls, registries and entries?

"12. Identifying them with their dates, numbers and official titles, if any, as well as the name of the body or officers who

promulgated or enacted them or persons who issued them, give the laws, regulations, minimum wage orders or decrees, hours of work or working conditions, collective bargaining agreements, contracts of employment, agreements for services, or any other kind of arrangement on which the defendant based its computation of the basic or ordinary salary, the regular and extra working hours, periods of rest paid for (if any) the workweek, and the workmonth of the plaintiff as an employee of the defendant during each of the different periods referred to in questions Nos. 1 to 8.

"13. Give the complete name and address, street, number, place, and city of each of the witnesses defendant proposes to use to prove the allegations of its answer to the complaint, stating each of the particulars or points which it intends to prove with each of the witnesses, as well as the degree or relationship, type or description of friendship, business or contractual relation, any social, political, religious, or union tie or any other common ties or interest of companionship, fraternity, or association of any kind that might exist between each of those witnesses with each of the other witnesses of the defendant, with each of the officers, employers or high employees of the defendant and with the defendant itself.

"14. State and describe, so that it may be identified, indicating where it may be found, each piece of documentary or written evidence and each material object perceptible to the senses which the defendant proposes to offer or to present at the trial to support the allegations of its answer to the complaint with the express indication of each of the particulars that it intends to prove with each book, document, writing or material object.

"15. State if it exists and if so, where and in whose possession there may be found each of the three documents which are mentioned under the title 'stoppel' (sic) immediately before the prayer on page 5 of the answer to the complaint; and also state the exact and precise place, date, hour and occasion on which it was executed, what was the reason for its execution, who drafted or prepared it, with what instrument or mechanical means was it written, who signed it and in what capacity, who were the witnesses to it, what other people, if any, were present when it was drafted and when it was signed, with what and for whom each of the said three documents was signed.

"16. What payments has the defendant made to the plaintiff by check, cash, or in any other way or in services?

"17. Which are the 'records of the defendant' mentioned in the last sentence of paragraph II, p. 4 of the answer to the complaint?

"18. Was the plaintiff ordered and, as a matter of fact, was he in the habit of preparing, marking or signing any book or books, cards or documents indicating the time of arrival at and of departure from work? If this is answered in the affirmative, state whether they were books, cards, or documents, and if any of these, the exact place and under whose charge or custody and inspection they were kept at that time as well as at present. Did the other employees follow that same procedure? In how many of those books, cards, or documents, as the case might be, how many days and how many times each day, is the time of arrival and departure of employee marked or signed and with what? What employee or agent of the defendant or how many if more than one, received or collected and how, when, from whom or from where, the books, cards, or documents? Were they typewritten or with blanks or spaces to be filled in or without them, or totally or partially handwritten?"

The district court overruled the objections of the defendant to these interrogatories. The defendant filed a motion for reconsideration which the lower court denied, except that it directed the defendant not to answer Interrogatory No. 13 in the light of the holding in *Long Corporation* v. *District Court*, 72 P.R.R. 31. We granted the petition for certiorari filed by the defendant to review the order requiring it to answer the plaintiff's interrogatories.

In *Hickman* v. *Taylor*, 329 U. S. 495, the Supreme Court said at pp. 500–01, 507:

"The pre-trial deposition-discovery mechanism established by Rules 26 to 37 is one of the most significant innovations of the Federal Rules of Civil Procedure. Under the prior federal practice, the pre-trial functions of notice-giving, issue-formulation and fact-revelation were performed primarily and inadequately by the pleadings. Inquiry into the issues and the facts before trial was narrowly confined and was often cumbersome in method. The new rules, however, restrict the pleadings to

the task of general notice-giving and invest the deposition-discovery process with a vital role in the preparation for trial. The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues. Thus civil trials in the federal courts no longer need be carried or in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial.

"    .    .    .    .    .    .    .

"We agree, of course, that the deposition-discovery rules are to be accorded abroad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period proceeding it, thus reducing the possibility of surprise. . . . "

We thus see that the function of the pleadings is merely to skeletonize the controversy and for each party to notify the other of the general nature of their opposing contentions. On the other hand, discovery, including interrogatories, is available to prevent either of the parties from holding back any of the relevant facts until trial. Indeed, the rules for discovery are the heart of the effort to destroy once and for all the sporting theory of justice. A law suit should no longer be a battle of wits between counsel. The parties must lay their cards on the table prior to trial, as "either party may compel the other to disgorge whatever facts he has in his possession". See generally, 4 Moore's Federal Practice, 2d ed., p. 1012 et seq.

The scope of discovery is extremely broad. Rule 26(b) provides that depositions may be taken "regarding any mat-

ter, not privileged, which is relevant to the subject matter involved in the pending action . . . ". Interrogatories under Rule 33 may cover the same wide range, for the scope of inquiry by interrogatories under Rule 33 is coextensive with the scope of discovery by deposition under Rule 26 (b). 4 Moore, *supra*, pp. 2289–91. This means that discovery, either by deposition or by interrogatories, is not confined to eliciting evidence which is admissible at the trial. On the contrary, discovery may be utilized among other things (1) to narrow the issues, in order to confine the production of evidence at the trial to the residue of matters which are actually in dispute; (2) to obtain evidence for use at the trial; (3) to secure information which would serve as a clue and lead to evidence that may be used at the trial. Holtzoff, Instruments of Discovery Under Federal Rules of Civil Procedure, 41 Mich.L.Rev. 205–06.

This does not mean that inquiry prior to trial by interrogatories has no limits whatsoever. In the first place, interrogatories may be disallowed *in the discretion of the trial court* if the inquiry "is clearly outside the borders of the case". 4 Moore, *supra*, p. 2297. Secondly, even where the information sought is relevant, a party cannot harass his opponent with expensive and burdensome interrogatories where the information requested is not, comparatively speaking, of substantial value to the moving party. 4 Moore, *supra*, p. 2314. Here again the matter rests within the discretion of the district court.

With the foregoing as a background, we consider first the contention of the defendant that despite their relevancy, the interrogatories call for information which would be burdensome and oppressive on the defendant to furnish. The defendant's theory is that the plaintiff, by inspecting the defendant's books, can obtain the said information for himself, and that the defendant should not be required to sift and compile this data for the plaintiff.

On this question, the general principles which can be deduced from the cases is stated in 4 Moore, *supra*, pp. 2314–16 as follows:

"(1) The fact that to answer interrogatories might be burdensome or expensive is not a valid objection if the information is relevant and material. However, the court has authority to make orders to prevent oppression and to avoid undue expense, and 'where the burden is heavy, where a segregation and analysis of a great mass of material is necessary, or where data and information must be compiled and collated, some, and perhaps the greatest share, of that burden and effort should fall on the party seeking the information.' The court should weigh the annoyance and expense involved against the value of the information sought; while the allowance of interrogatories is in the sound discretion of the court, the usual presumption is in favor of liberal discovery of relevant matters.

"(2) 'A party may not object to interrogatories on the ground that they would require extensive research, investigation and expense, if they relate to details alleged in his pleading and concerning which he presumably has information', unless 'the answer would require an excessive or oppressive amount of research or compilation of data and at great expense.'

"(3) While a party must furnish in answer to interrogatories whatever information is available to him, ordinarily a party will not be required to 'make research and compilation of data not readily known to him'—at least if it is equally available to the interrogating party.

"(4) A general objection that interrogatories are onerous and burdensome and require the party to make research and compile data raises no issue. The objection must make a specific showing of reasons why the interrogatory should not be answered."

The defendant has made no specific showing of the exact burden which would be imposed on it to answer these interrogatories. It states in its brief that more than 11,200 individual notations would have to be compiled merely to answer the question as to the plaintiff's arrival and depar-

ture every day for 14 years.[2] Such a general statement is not sufficient. It gives no figures as to how long it would take to determine these arrival and departure dates. If, as the defendant contends, the plaintiff did not work extra hours except on a few occasions, it need only list the latter and state that for the rest of the time there was a uniform arrival and departure time at such and such an hour. Moreover, since it is concededly covered by the Fair Labor Standards Act, the defendant is required by law to keep records prescribed by the Federal Administrator, 29 U.S.C., Appendix, p. 433 *et seq.*[3] In the absence of a showing to the contrary, we think it is not unreasonable to assume that in a comparatively short period of time a clerical employee of the defendant, who is familiar with the said records, could with the aid of a business machine which the defendant undoubtedly possesses tabulate the information requested in the interrogatories relating to the periods of time the plaintiff worked and his pay.

Indeed, an impartial study has disclosed that if anything the oppression in this type of case in the past has been by employers rather than by employees. Speck, The Use of Discovery in United States District Courts, 60 Yale L.J. 1132, 1143–44 states that "The only general pattern of the abuse of discovery appeared in the use of interrogatories in FLSA cases involving portal-to-portal and overtime-on-overtime issues. These cases were typically brought by hundreds or thousands of individual plaintiffs against one or more stevedoring or shipping firms. The defendants almost invariably served interrogatories, with their answers or soon thereafter, calling upon the plaintiffs' attorneys to give the

---

[2] As hereinafter noted, the defendant is entitled to a preliminary hearing on its special defense of prescription, and may possibly be required to answer the interrogatories only for 2 years.

[3] We have in the past given great weight to such records when duly kept as required by law, even to the extent of overturning findings of fact by district courts based on oral testimony which conflicted with such records. *Chabrán* v. *Bull Insular Line,* 69 P.R.R. 250, 278–80; *Vélez* v. *Royal Bank,* 65 P.R.R. 912.

name, address, social security number, company number, periods of employment, and customs of employment as to each plaintiff or each plaintiff claimed to have been employed by the particular defendant. Theoretically plaintiffs should be able to make their claims specifically in terms of hours worked on particular days, but these plaintiffs were uneducated workmen whose employment had shifted frequently —in the case of stevedores, perhaps from day to day—and who had kept no records and could not possibly remember their work hours over the several years in litigation. The defendants, who could obtain this information from their own records, could not have seriously expected the plaintiffs to furnish it. Thus such interrogatories were probably filed to harass the plaintiffs and gain advantage in relief under Rule 37. In certain New York cases the plaintiffs retaliated by asking for 33 items of information relating to hours and shifts worked, cargo handled, customers served, etc. for each of 5,000 plaintiffs. Here the burden upon defendants of answering, if their records even contained the information, would be tremendous. *These questions should have been handled by thorough investigation of a few selected employees, the results as to these to govern the others.*" (Italics ours.).

As in the cases cited by Speck, here the defendant initiated this type of interrogatories. See footnote 1. The defendant can scarcely complain because the plaintiff was an apt pupil and submitted to the defendant, substantially the same interrogatories. We see no oppression on either party in requiring them to exchange pertinent information as to the work-record of one plaintiff. The defendant should remember that what is sauce for the goose is sauce for the gander.[4]

[4] We might reach a different result if hundreds of employees were involved as in the example cited by Speck. But here the reciprocal interrogatories filed by the parties do not suffer from the vice described by Speck as they involve only one plaintiff.

The defendant does not rely on certain cases which have held that a party who has been served with interrogatories may not "toss the ball back" to the adverse party by serving substantially identical interrogatories upon him. *Brown* v. *Dunbar & Sullivan Dredging Co.*, 8 F.R.D. 105 (Dist. Ct., N.Y., 1948); *Woods* v. *Kornfield*, 9 F.R.D. 196 (Dist. Ct., Pa., 1949). We agree with Moore that those cases were not correctly decided on this particular point. As he indicates a party cannot "forestall proper inquiry by anticipating his opponent's line of attack and serving interrogatories upon him first. The question is which party should furnish the information to the other, and not which happens to serve his interrogatories first." 4 Moore, *supra*, p. 2261.

We are aware of the argument that the plaintiff could obtain this information for himself by inspecting the records of the defendant under the order of the district court. But interrogatories are not confined to obtaining information. Another purpose thereof as we have seen is to obtain admissions of fact in order to dispense with the necessity of proof. Indeed, occasionally, the answers to interrogatories may afford a basis for summary judgment, thereby eliminating the necessity for a trial at all. *Cámara de Comerciantes* v. *Osorio*, 68 P.R.R. 616. Consequently, even though the plaintiff had access to the records of the company, the latter can be required to admit the facts revealed by its records.

Under all the circumstances of this case we cannot agree with the defendant that it has met the burden of showing affirmatively that the interrogatories eliciting information regarding the plaintiff's hours of work and pay are oppressive and burdensome as compared with their substantial value to the plaintiff in narrowing the issues of fact which will really be in dispute at the trial. *Adelman* v. *Nordberg Mfg. Co.*, 6 F.R.D. 383 (Dist. Ct., Wisc., 1947); *Brown* v. *Dunbar & Sullivan Dredging Co.*, 8 F.R.D. 107 (Dist. Ct. W.D., N.Y., 1948); *Aktiebolaget Vargos* v. *Clark*, 8 F.R.D.

635 (Dist. Ct., D.C., 1949); see *O'Malley* v. *Chrysler Corporation*, 160 F. 2d 35 (C. A. 7, 1947).[5]

We turn now to the series of interrogatories to which the defendant objects on the ground that they call for irrelevant information. Here the defendant urges that it has pleaded prescription of two and three years under the Federal and insular laws, respectively, and that it therefore should not be required to answer interrogatories relating to work performed more than two years before the complaint was filed on March 2, 1950. Despite the liberality of the discovery rules, "interrogatories must have some bearing on the subject matter of the action". 4 Moore, *supra*, p. 2300. The cases therefore hold and we agree that interrogatories relating to claims based on facts which occurred outside the period of limitations ordinarily should be ruled out. 4 Moore, *supra*, p. 2302; *Adelman* v. *Nordberg Mfg. Co.*, *supra*.[6]

One difficulty in connection with the application of the foregoing authorities is that in our case the issue of prescription is as yet unsettled. However, we have characterized § 1867 of the Civil Code as providing for a statute of limitations which is highly unreasonable in its practical operations. *Chabrán* v. *Bull Insular Line*, 69 P.R.R. 250, 264. We think that where as here a claim goes back 14 years, the defendant should be given an opportunity to request a preliminary hearing on its defense of prescription. See *Muñoz*

---

[5] We leave open the question of whether we would reach a different result if this case had been filed by the Commissioner of Labor who inspect the books of employers pursuant to law and is empowered to sue employers on wage claims for the benefit of their employees. See *Commissioner of Labor* v. *Román*, *ante*, p. 294. *Cf. Walling* v. *Parry*, 6 F.R.D. 554 (Dist. Ct., Pa., 1947); *United States* v. *American Locomotive Co.*, 6 F.R.D. 35 (Dist. Ct., Ind., 1946); *Porter* v. *Central Chevrolet*, 7 F.R. D. 86 (Dist. Ct., Ohio, 1946).

[6] We are not to be understood as holding that inquiry can never be made for work done prior to the prescriptive period. For example, if it were relevant to determine a pattern of conduct, inquiry would not necessarily stop automatically at the statutory cut-off date. See 4 Moore, *supra*, p. 1067. But the plaintiff makes no such contention here.

v. *District Court*, 72 P.R.R. 788. After the lower court has ruled on the issue of prescription, the defendant will be required to answer only those interrogatories which relate to claims which are not barred by prescription or otherwise.[7]

Aside from the question of prescription, the defendant objects specifically to Interrogatories Nos. 5, 6, 7, 10, and 12 on the ground that the information sought in those questions is not relevant. It relies on a statement in 4 Moore, *supra*, p. 2301 that "Interrogatories in an action under the Fair Labor Standards Act may not call for information as to employees not parties to the action and who would not be affected by it."

We agree with the foregoing quotation from Moore because ordinarily information as to fellow-employees not parties to the suit does not have any bearing on other employees' claims. But Interrogatories Nos. 5, 6 and 10 are not mere efforts to obtain information as to wages of fellow-employees. In asking in Interrogatories Nos. 5 and 6 for the identity and position of the plaintiff's superior, the plaintiff may be seeking clues which he could thereafter pursue by depositions or at the trial in order to substantiate his claim for overtime pay. As we have already seen, the plaintiff is entitled to engage in such a "fishing expedition" involving facts not admissible in evidence if it is reasonably calculated eventually to lead to the discovery of admissible evidence. In the same way, the answer to Interrogatory No. 10 will help him determine the most effective way to seek documentary proof for his claim. Indeed, the defendant used this very approach in its own Interrogatories Nos.

---

[7] We need hardly add that we are expressing no view as to the validity of any of the special defenses, including prescription. Also, if such a preliminary hearing is requested by the defendant, it should be held promptly and the matter decided as soon as possible as this wage suit has already been considerably delayed. Moreover, the order requiring answers to the defendant's interrogatories should of course be re-examined in the light of the ruling on the issue of prescription.

4 and 8. We therefore cannot agree that the information sought in Interrogatories Nos. 5, 6 and 10 is not relevant.

However, we agree with the defendant that Interrogatory No. 7 is objectionable. To require the defendant to ferret out the identity of every purchaser of gasoline and the amount delivered to him on every trip for a number of years would be a tremendous task as it is hardly likely that such information is kept in a tabulated form. On the other hand, we are unable to see how that information would be of material aid to the plaintiff in establishing his claim or in furnishing a clue to other information.[8]

Interrogatory No. 12 likewise need not be answered except insofar as it calls for identification of collective bargaining agreements or other private arrangements on which the defendant relies. As we have seen, one of the purposes of interrogatories is to narrow the issues to enable the interrogating party to ascertain what he will have to meet at the trial. Consequently, we do not lay down any rigid rule that opinions or "contentions" may not be sought by interrogatories. 4 Moore, *supra*, pp. 2310–12. *Cf.* last sentence of defendant's Interrogatory No. 16, footnote 1. But we have found no case which holds that the theory of law on which the opposing party relies may be elicited by interrogatories. Even Holtzoff, who is ultra-liberal on this question, says in 41 Mich.L.Rev. *supra*, at p. 215 that a party may not be interrogated concerning "conclusions of law". To the same effect, *Aktiebolaget Vargos* v. *Clark*, *supra*. A pre-trial conference would undoubtedly be helpful and should be utilized to determine the precise issues of law in a case, 4 Moore, *supra*, p. 2312. But we cannot hold that interrogatories are appropriate for searching questions on applicable law in order to obtain the fruits of an op-

---

[8] The defendant itself opened the door on this line of inquiry in its Interrogatory No. 5. We assume that the lower court will modify its order requiring the plaintiff to answer that question in view of our ruling herein.

ponent's legal research. This would, we think, tend to approach the work-product of the lawyer which the Supreme Court in *Hickman* v. *Taylor, supra,* protected from interrogatories.[9]

■■ The defendant asserts that the lower court should have granted its objections to certain questions on the ground that the information requested therein had already been supplied by the defendant in its answer. The defendant's brief argues this point only with reference to Interrogatory No. 8. The answer to this argument has already been given. Interrogatories as we have seen may be used not only to obtain information but to procure admissions of disputed questions which will narrow the issues required to be tried. A party will sometimes deny facts in an answer which it may have to admit when it is pinned down with specific interrogatories. The plaintiff was therefore entitled to put interrogatories to the defendant as to his hours of work and pay even though the defendant claims to have incorporated the same information in its answer.

We agree with the defendant that Interrogatory No. 14 is objectionable under the rule laid down in *Long Corporation* v. *District Court, supra.* To the same effect, *Aktiebolaget Vargos* v. *Clark, supra.*[10]

Except in the instances already noted, we do not find that the lower court abused its discretion in requiring the defendant to answer the interrogatories served upon it by the plaintiff. *Newell* v. *Phillips Petroleum Co.,* 144 F. 2d 338 (C. A. 10, 1944).

The order of the district court will be modified to provide that (1) Interrogatories Nos. 7 and 14 need not be answered; (2) Interrogatory No. 12 need not be answered except as to collective bargaining agreements or other

---

[9] What we have said in footnote 8 also applies to the defendant's Interrogatory No. 10.

[10] Here again defendant's Interrogatory No. 12 should be re-examined by the lower court in the light of this ruling.

private arrangements; (3) all interrogatories relating to hours of work and pay need not be answered for claims based on work performed more than two years prior to the date of the filing of the complaint until after the lower court passes on the issue of prescription. With the order of the district court thus modified, the case will be remanded for further proceedings.