## ALEXANDER *v.* UNITED STATES.
## WHITING *v.* SAME.
## STUART *v.* SAME.
## GENERAL PAPER COMPANY *v.* SAME.
## HARMON AND GENERAL PAPER COMPANY *v.* SAME.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE EASTERN DISTRICT OF WISCONSIN.

Nos. 381, 382, 383, 384, 385.    Argued January 5, 8, 1906.—Decided March 12, 1906.

In a suit in a Circuit Court of the United States brought by the United
States against corporations for violations of the Anti Trust Law of July 2,
1890, a witness refused to answer questions or produce books before the
examiner on the ground of immateriality, also pleading the privileges of
the Fifth Amendment; the court overruled the objections and ordered
the witness to answer the questions and produce the books; an appeal
was taken to this court. *Held,* that:

While such an order might leave the witness no alternative except to obey
or be punished for contempt it is interlocutory in the principal suit and
not a final order, nor does it constitute a practically independent pro-
ceeding amounting to a final judgment, and an appeal will not lie there-
from to this court.

If the witness refuses to obey and the court goes further and punishes him
for contempt there is a right of review, and this is adequate for his pro-
tection without unduly impeding the process of the case.

THE facts are stated in the opinion.

*Mr. James G. Flanders,* with whom *Mr. Charles F. Fawsett*
and *Mr. William Brace* were on the brief, for appellants.[1]

*Mr. Frank B. Kellogg* and *Mr. James M. Beck,* Special As-
sistants to the Attorney General, for the United States.[1]

---

[1] For abstracts of arguments see abstracts in *Nelson* v. *United States, ante,*
p. 92, argued simultaneously herewith.

MR. JUSTICE MCKENNA delivered the opinion of the court.

At the very beginning we encounter a question of jurisdiction. Are the orders of which the appellants complain appealable? The orders direct the appellants respectively to appear before Robert F. Taylor, special examiner in the case, at the time and place to be designated, and directs each of them to "answer each and every question put to them respectively by the counsel for the complainant, the United States of America," and to produce before such commissioner certain books, papers, records, documents, reports and contracts, "for the purpose of their respective examination in said cause, and for use in evidence of the complaint of the United States of America in said examination." And it is ordered that the complainant's counsel shall have the right to inspect the said books, etc., and to introduce them or any of them in evidence; but, except as necessary for such purposes, the books, etc., to remain in the custody of the appellants.

A brief statement of the proceedings is all that is necessary. The United States by its proper officers brought suit in the Circuit Court of the United States for the District of Minnesota against the General Paper Company and twenty-three other corporations, defendants, under and pursuant to the provisions of the act of Congress of July 2, 1890, entitled "An act to protect trade and commerce against unlawful restraints and monopolies." It is alleged in the bill that the defendants, other than the General Paper Company and the Manufacturers' Paper Company, were engaged in the manufacture of manilla and fibre papers in active competition with one another, and that they entered into an agreement, combination and conspiracy to control, regulate and monopolize, not only the manufacture of news print, manilla, fibre and other papers, but also the distribution and shipment thereof among and throughout the Middle, Southern and Western States. The General Paper Company was the means employed to execute the combination and conspiracy. That company is a corporation organized, the bill alleges, by

the other defendants, under the laws of the State of Wisconsin, with a capital stock of $100,000, divided into one thousand shares, which were distributed among and owned and held by the other defendants, in proportions based upon the average daily output of the mills of each defendant. It is authorized to become at its principal place of business the sales agent of the products of the defendants' mills in the State of Wisconsin and elsewhere. Absolute power is conferred upon it to control and restrict the output of the mills, fix the price of their products, and determine to whom and the terms and conditions upon which such products shall be sold, into what States and places they shall be shipped, and what publishers and customers each mill shall supply.

The Manufacturers' Paper Company, it is alleged, is a New York corporation, with its principal place of business in Chicago, and from about the year 1897 to 1902, acted as the sales agent of various manufacturers of paper for the sale of newsprint and other papers; that in 1902 it became a party to the combination and conspiracy alleged in the bill and agreed with the General Paper Company not to compete with it in certain territories.

It is admitted that, prior to the formation of the General Paper Company, the other defendants except the Manufacturers' Paper Company, were in active competition. The formation of the General Paper Company is also admitted and that it became, by contract with the defendants who manufacture paper, their selling agent. The defendants deny, however, a purpose to violate the act of July 2, 1890. The violation of that law is the issue in the case, and the bill prays an injunction against the defendants and their officers from doing the acts or executing the purpose charged against them.

In trial of the issue thus made the Circuit Court appointed Robert S. Taylor special examiner, with authority to hear and take testimony within and without the District of Minnesota, and made an order fixing the time to take the testimony for the United States the sixteenth day May, 1905, at the city of Mil-

waukee, State of Wisconsin.   The order was duly served on the
counsel of the respective parties.   Thereupon the United States
petitioned the Circuit Court for an order directing the clerk of
the Circuit Court to issue a *subpœna duces tecum*.   The subpœna
was duly issued and served on the appellants as individuals and
as officers of certain of the defendant companies.   They ap-
peared before the examiner in obedience to the subpœna, but,
under the advice of counsel, they refused to permit the use of
books or certain parts of them, and refused to answer certain
questions put to them, the ground of this action being the im-
materiality and irrelevancy of the evidence sought to be ad-
duced.   The United States then presented a petition to the
United States Circuit Court for the District of Wisconsin, which
recited the issues in the case and the statement of the questions
asked and the parts of the books and documents sought to be
used.   To this petition the appellants filed separate answers.

The answers may be regarded for our present purpose as iden-
tical.   They allege the immateriality of the evidence and that
its materiality should be established as a condition precedent
to its production; that they are officers of the companies, and
as such officers, the custodians of the books, papers and docu-
ments, and that the same are of interest and value to the com-
pany in its business, and the company forbids their production;
that the United States seeks evidence to convict the company
and the individual appellants of violations of the act of July 2,
1890, to annul the contracts and agreements of the company,
and subject it and the other appellants to the penalties pre-
scribed in that act, and to compel the company and the other
appellants to furnish evidence against themselves, contrary to
the provisions of the Fifth Amendment to the Constitution of
the United States, which provides that no person shall be a wit-
ness against himself; also contrary to the Fourth Amendment
of the Constitution of the United States, which provides that
the right of the people to be secure in their persons, houses,
papers and effects against unreasonable searches and seizures
shall not be violated.   It is also said that the alleged acts of the

paper company complained of in the original petition of the
United States and which the United States is endeavoring to
establish would, if committed by the company, be violations
of the laws of Wisconsin, and would subject the company to
forfeiture of its charter and other penalties under said laws, and
to compel it through its officers to produce the books and docu-
ments sought would be to compel it to furnish evidence tend-
ing to establish that it has violated the law of the State, and
such purpose is contrary to the provisions of the Fourth and
Fifth Amendments of the Constitution of the United States.

As we have said, the court entered orders requiring the appel-
lants to answer the questions put to them and to produce the
books, papers and documents requested. Appeals were allowed
to this court. To justify the appeals, appellants contend that
the orders of the Circuit Court constitute practically independ-
ent proceedings and amount to final judgments. To sustain
the contention, *Interstate Commerce Commission* v. *Brimson*,
154 U. S. 447, and *Interstate Commerce Commission* v. *Baird*,
194 U. S. 25, are cited.

Those cases rested on statutory provisions which do not ap-
ply to the proceedings at bar, and, while there may be resem-
blances to the latter, there are also differences. In a certain
sense finality can be asserted of the orders under review, so, in
a certain sense, finality can be asserted of any order of a court.
And such an order may coerce a witness, leaving to him no
alternative but to obey or be punished. It may have the effect
and the same characteristic of finality as the orders under re-
view, but from such a ruling it will not be contended there is
an appeal. Let the court go further and punish the witness for
contempt of its order, then arrives a right of review, and this is
adequate for his protection without unduly impeding the prog-
ress of the case. Why should greater rights be given a witness
to justify his contumacy when summoned before an examiner
than when summoned before a court? Testimony, at times,
must be taken out of court. In instances like those in the case
at bar the officer who takes the testimony, having no power to

issue process, is given the aid of the clerk of a court of the United States; having no power to enforce obedience to the process or to command testimony, he is given the aid of the judge of the court whose clerk issued the process, and if there be disobedience of the process, or refusal to testify or to produce documents, such judge may "proceed to·enforce obedience  .  .  . or punish the disobedience in like manner as any court of the United States may proceed in case of disobedience to like process issued by such court." Sections 868, 869, Revised Statutes. This power to punish being exercised the matter becomes personal to the witness and a judgment as to him. Prior to that the·proceedings are interlocutory in the original suit. This is clearly pointed out by Circuit Judge Van Deventer, disallowing an appeal from an order like those under review, in the case of *Nelson* v. *United States* (No. 490), in error to the Circuit Court of the United States for the District of Minnesota. The learned judge said:

"I am of opinion that the mere direction of the court to the witnesses to answer the questions put to them and to produce the written evidence in their possession is not a final decision; that it more appropriately is an interlocutory ruling or order in the principal suit, and that if the witnesses refuse to comply with it and the court then exercises its authority either to punish them or to coerce them into compliance that will give rise to another case or cases to which the witnesses will be parties on the one hand and the Government, as a sovereign vindicating the dignity and authority of one of its courts, will be a party on the other hand. I have no doubt that a judgment adverse to the witnesses in that proceeding or case will be a final decision and will be subject to review by writ of error, but not by appeal. My opinion is also that the parties to the principal suit cannot appeal or obtain a writ of error from that decision."

See also *Logan* v. *Penn. R. R. Co.*, 132 Pa. St. 403, 410.

This court having no jurisdiction, the appeals must be dismissed, and

*It is so ordered.*