HULTBERG v. ANDERSON et al. †

SAME v. CHYTRAUS.

(Circuit Court of Appeals, Seventh Circuit. November 21, 1913.)

No. 1970.

1. CONTEMPT (§ 66*)—FINAL JUDGMENT—WRIT OF ERROR.

Punitive contempt orders are criminal in their nature arising in the exercise of the inherent power of the court to preserve its authority and punish violations thereof, either by parties to the suit or third parties within the cognizance of the court, and are therefore independent and final and subject to review in matters of law by a writ of error.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 213–215, 223–237; Dec. Dig. § 66.*]

2. CONTEMPT (§ 66*)—ORDER—APPEAL—CIVIL PROCEEDINGS.

Where a contempt order is purely remedial as between the parties to the suit, to compel a witness to testify to matters which he claims are privileged, such order is interlocutory and not reviewable except on appeal from a final decree.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 213–215, 223–237; Dec. Dig. § 66.*]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Christian C. Kohlsaat, Judge.

Action by Nels O. Hultberg against Peter H. Anderson and others. Contempt proceedings by Nels O. Hultberg against Axel Chytraus. From an order dismissing a rule to show cause why defendant Chytraus should not be punished for contempt, Hultberg appeals. Dismissed.

See, also, 203 Fed. 853, 122 C. C. A. 171.

This appeal is brought from an order of the District Court, entered in an ancillary proceeding in aid of taking testimony on behalf of the appellant before a special examiner, appointed in an equity suit pending in the District Court of the United States for the District of Kansas. The order in question denies an application to punish the appellee, as a witness before the examiner, for contempt of court in refusing to answer questions which the District Court had required him to answer, in an order theretofore made on certification of prior proceedings in the examination of such witness.

Harris F. Williams, John Barton Payne, Silas H. Strawn, and Max H. Whitney, all of Chicago, Ill., and David Ritchie, of Salina, Kan., for appellant.

E. Allen Frost and John J. Healy, both of Chicago, Ill., for appellee.

Before BAKER and SEAMAN, Circuit Judges, and LANDIS, District Judge.

SEAMAN, Circuit Judge. The appellant, Hultberg, is the complainant in a creditor's bill, filed in the District Court of the United States for the District of Kansas, against the Andersons, husband and wife, wherein that court appointed a special examiner to take testimony in the cause. Such examiner was proceeding to take testimony in Chicago, when the appellee (one of the attorneys for the Andersons) was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied January 12, 1914.

called as a witness on behalf of the appellant. On questions propounded to the witness, in reference to the present whereabouts of the Andersons, he refused to answer, stating two grounds of objection: (a) That of privilege as their attorney, and (b) immateriality of the questions. The examiner certified the matter to the District Court of the United States for the Northern District of Illinois, and the appellant petitioned that court for ancillary relief in the premises, which was granted, after a hearing, in the entry of a rule against the witness to answer the questions certified. Recalled before the examiner, the witness persisted in his refusal, and the District Court, on petition filed by the appellant, entered a rule against the witness to show cause why he should not be punished for contempt. The hearing, however, upon the petition and an answer filed on the part of the witness, resulted in an order that the rule be "discharged at the costs of the petitioner"; and this appeal is brought by the petitioner from the order so made, with the right of appeal seemingly unquestioned.

On the hearing of the appeal in this court, the arguments of counsel, both oral and printed, were entirely directed to their respective controversies upon the merits of the proceeding, without reference to the question of appealability of the order, until attention was called to that feature by inquiries from the bench. Pursuant to direction of the court, however, briefs have been submitted thereupon, and we take up the jurisdictional inquiry, which can neither be waived by counsel nor disregarded by the court, as appears to be suggested in both briefs. Without appellate jurisdiction over the subject-matter in controversy, no ruling or intimation of opinion upon the merits involved therein is authorized.

The right of review by writ of error or appeal is prescribed by acts of Congress, and from the earliest Judiciary Acts such review by the Supreme Court has been limited to the final judgments or decrees of trial courts. In the act creating the Circuit Court of Appeals "final decisions" were named as the limitation; but its meaning is well settled to be identical with the terms final judgments or decrees above mentioned, so that, with the exception of appeals authorized therein from specified interlocutory orders for injunctions and receiverships, this fundamental requirement of finality is alike in both appellate jurisdictions, and the tests of finality as settled for review by the Supreme Court are equally applicable to this court. Loveland's App. Jur. Fed. Courts, § 39. The main difficulty, if not the only one, in the way of its ascertainment, has arisen in equity and admiralty causes, wherein decrees are commonly granted for various purposes during the progress of the cause, in advance of complete relief, and the decisions have been numerous and not entirely harmonious (McGourkey v. Toledo & O. Ry., 146 U. S. 536, 545, 13 Sup. Ct. 170, 36 L. Ed. 1079), upon the question whether various decrees so entered were in reality final, within the meaning of the limitation, or merely interlocutory and thus not appealable. All the authorities, however, concur in the elementary rule that appeals are not entertainable from such orders or decrees when they are distinguishable as merely interlocutory. We do not understand counsel for the appellant to controvert this undoubted general rule,

but that the contention is, in effect, that proceedings to punish for contempt, however interlocutory in their inception, are excepted from such rule, and that the ultimate order thereupon is recognized by the authorities as a finalty for the purposes of review. So, if it appears that both the proceedings and the order sought to be reviewed are unmistakably interlocutory, and thus not within the exceptional character of commitments for contempt, no doubt is entertainable that this appeal must be dismissed.

That the proceedings before the examiner and in the District Court were interlocutory in their entire nature is unquestionable. As aptly defined (see 2 Daniell's Chancery Pl. & Pr. c. 35):

"An interlocutory application is a request made to the court for its interference in a matter arising in the progress of a cause, * * * and may relate to any matter upon which the interference of the court or judge is required, before or in consequence of a decree or order" in the cause.

Thus the appellant's successive applications to the District Court invoked its exercise of jurisdiction, purely ancillary, for the single purpose of interlocutory relief in aid of the bill filed in the Kansas district to require the witness to answer the questions submitted. It may be conceded that inconsistency appears between the ruling upon the one branch, requiring the answers, and the other denying enforcement of the prior order, but we believe both to be alike interlocutory of the single suit; and, furthermore, were such characterization of either order deemed otherwise questionable, we understand the rule of Alexander v. United States, 201 U. S. 117, 121, 26 Sup. Ct. 356, 50 L. Ed. 686, and other references in proceedings to charge contempt, to be decisive thereof. The order appealed from not only constitutes a refusal to exercise the power to punish the witness for contempt, but has the effect of overruling the first order, on reconsideration of the application for intervention, and must be so construed, notwithstanding recitals in the order which may indicate that the presiding judge entertained some other view for his ruling.

[1, 2] The decisions upon reviewability of orders punishing for contempt are numerous—mainly arising during the past twenty years, after appellate jurisdiction was conferred over criminal cases—and all are instructive in marking their distinction from orders which are merely interlocutory, although most if not all of these contempt orders arose through interlocutory proceedings, and in several of the cases the contempt also arose in such proceedings. In the early cases of Ex parte Kearney, 7 Wheat. 39, 5 L. Ed. 391, and New Orleans v. Steamship Co., 20 Wall. 387, 22 L. Ed. 354, review of contempt orders was denied, because "contempt of court is a specific criminal offense," and no review of criminal cases was then authorized. The doctrine is now established, however, that punitive contempt orders are criminal in their nature, arising in the exercise of the inherent power of the court to preserve its authority and punish violations thereof—either by parties to the suit or third parties within cognizance of the court—and are thus independent and final, not interlocutory, and subject to review in matters of law alone, by writ of error. Bessette v. W. B. Conkey Co., 194 U. S. 324, 326, 335, 24 Sup. Ct. 665, 48 L. Ed. 997; Matter of

Christensen Eng. Co., 194 U. S. 458, 24 Sup. Ct. 729, 48 L. Ed. 1072; Nelson v. United States, 201 U. S. 92, 26 Sup. Ct. 358, 50 L. Ed. 673; Alexander v. United States, 201 U. S. 117, 26 Sup. Ct. 356, 50 L. Ed. 686; Doyle v. London Guarantee Co., 204 U. S. 599, 27 Sup. Ct. 313, 51 L. Ed. 641; Webster Coal Co. v. Cassatt, 207 U. S. 181, 28 Sup. Ct. 108, 52 L. Ed. 160; Gompers v. Buck Stove & Range Co., 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874; Re Merchants' Stock & Grain Co., 223 U. S. 639, 32 Sup. Ct. 339, 56 L. Ed. 584; Grant v. United States, 227 U. S. 74, 33 Sup. Ct. 190, 57 L. Ed. 423. Contempt orders which are purely remedial as between the parties to the suit, remain interlocutory and are not reviewable, except under an appeal from the final decree. Bessette v. W. B. Conkey Co., supra; Re Merchants' Stock & Grain Co., supra. Thus, were the appellant's contention tenable for interpretation of the present order, no review would be authorized on his appeal, whether the application for enforcement invoked remedial or punitive action of the court; but our view of its interlocutory character requires dismissal of the appeal on that ground.

In Alexander v. United States, supra, the appeal from an order requiring the witness to answer questions was dismissed on like view of the order as purely interlocutory, under like application for the exercise of ancillary jurisdiction to that end. Definition of the proceedings was directly involved for decision, and for such definition the opinion aptly states the distinction above mentioned between interlocutory proceedings or orders and orders punishing for contempt, in substance: That prior to the exercise by the court of its power to punish for contempt, "the proceedings are interlocutory in the original suit"; but, when the power is exercised, "the matter becomes personal to the witness," giving rise to another case in which the witness becomes a party, and the order is final as to him. This distinction is observed in Nelson v. United States, supra, and in earlier cases, and reaffirmed in Webster Coal Co. v. Cassatt, 207 U. S. 181, 186, 28 Sup. Ct. 108, 52 L. Ed. 160. So, whatever may have been the ground for denial of the application to commit the appellee for contempt, it is obvious that the power of the court to that end was not exercised in the order denying such application.

On behalf of the appellant it is urged that no remedy is open without review of the present order, to obtain the information needful for prosecution of his suit. This may be true—as may be said of other interlocutory proceedings of equal or greater importance to the parties—but the remedy in such case, as said by Mr. Justice Storey, in Ex parte Kearney, supra, is for "the Legislature, and is not to be devised by courts of justice." Moreover, it may well be remarked, as to this contention, that throughout the first century of our federal system no criminal cases and only a limited class of civil cases were reviewable. The acts extending review to all final decisions were of undoubted benefit, but extensions to include all interlocutory orders would not seem either practicable or desirable.

LANDIS, District Judge (concurring). In my view of this case, it is desirable to direct attention to the statute under which the proceed-

ings were had in the District Court and to certain matters of record, in addition to the statement in the majority opinion.

The act follows:

"Sec. 868. When a commission is issued by any court of the United States for taking the testimony of a witness named therein at any place within any district or territory, the clerk of any court of the United States for such district or territory shall, on the application of either party to the suit, or of his agent, issue a subpœna for such witness, commanding him to appear and testify before the commissioner named in the commission, at a time and place, stated in the subpœna; and if any witness, after being duly served with such subpœna, refuses or neglects to appear, or, after appearing, refuses to testify, not being privileged from giving testimony, and such refusal or neglect is proven to the satisfaction of any judge of the court whose clerk issues such subpœna, such judge may proceed to enforce obedience to the process, or punish the disobedience, as any court of the United States may proceed in case of disobedience to process of subpœna to testify issued by such court." U. S. Comp. St. 1901, p. 664.

The subpœna was issued and served on the respondent Chytraus. It commanded him to appear before the special examiner "to testify in behalf of the complainant" (appellant). He appeared but refused to testify. Thereupon arose the right of the complainant to an order on the respondent by "the judge of the court whose clerk had issued" the subpœna. But an order on the respondent to what end? Clearly not at that time to punish respondent's disobedience, for he had not then been ordered by the judge to answer. The refusal had occurred before the examiner, and that officer was without authority even to pass on the question of the admissibility of the evidence. Accordingly, complainant applied to the judge for an order "requiring Chytraus to answer the questions." As a basis for this application, complainant's petition set forth the pendency of the Kansas proceedings, the issuance of the commission to the examiner, the issuance of the subpœna out of the office of the clerk of the court below, the service of the subpœna, and respondent's refusal to answer before the examiner.

On the hearing of this application the court ordered "that the witness Axel Chytraus answer the questions certified by the examiner." The parties then went before the examiner, and, the questions being again put, the witness persisted in his refusal.

This refusal to obey the order of the court gave to the complainant, who was seeking the testimony, the right to apply to the judge for an order authorized by the statute quoted above. As will be observed, that order might be either coercive, "to enforce obedience to the process," as by confining the respondent in jail until he should answer, which would be solely for the benefit of the complainant, or it might be to "punish the disobedience," which would be exclusively for the vindication of the court's authority.

For some reason, the complainant did not ask for a coercive order to enforce the witness' obedience to the court's order and thereby bring out the evidence. On the contrary, he contented himself merely with then asking that the respondent be punished because he had refused to answer; that is, the complainant asked for a punitive order, the imposition of a punishment for past disobedience. The application was "for a rule on the said Axel Chytraus to show cause why he should not be

214 F.—23

punished for contempt for failure to answer questions put to him." This application the judge granted, the order being that "Chytraus be and hereby is ruled to show cause, if any he has, why he should not be punished for contempt for his failure to answer questions before the examiner." It was the judge's discharge of this rule on the hearing, and his denial of complainant's application that respondent be punished, that was brought up for review; appellant's complaint here being that because of the judge's action appellant has lost the benefit of respondent's evidence.

But suppose the judge had done exactly what appellant requested, namely, punished the respondent for his disobedience by fine or imprisonment for a specified time, that would not have given appellant what he complains here he lost when the judge discharged the rule.

We can have no authority to hear an appeal which appellant had no right to bring, and it seems plain that appellant could not bring an appeal from the judge's refusal to enter a punitive order solely in vindication of his authority.

BAKER, Circuit Judge. If the record is to be read as showing that Hultberg was only a complaining witness in a criminal proceeding in the court below, I should agree with Judge LANDIS on the reason for dismissing Hultberg's appeal. But, as I view the record, Judge SEAMAN has stated the proper ground of the dismissal.

This appeal from the order of the District Court is therefore dismissed.