**In re Frederick BENJAMIN, Petitioner.**

**No. 78–1220.**

United States Court of Appeals,
First Circuit.

Argued June 8, 1978.

Decided Aug. 21, 1978.

Robert K. Dowd, South Yarmouth, Mass., with whom Carl J. Young and O'Neill & Young, Boston, Mass., were on memorandum, for appellant.

Stephen H. Jigger, Sp. Atty., Dept. of Justice, Boston, Mass., with whom Edward

F. Harrington, U. S. Atty. and Gerald E. McDowell, Sp. Atty., Dept. of Justice, Washington, D.C., were on brief, for appellee, United States.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, and PETTINE *, District Judge.

COFFIN, Chief Judge.

Appellant and one Tashjian are the principal employees of a corporation, Gerry's Bargain Center, Inc. At all time relevant to this appeal a law firm, O'Neill and Young, represented the corporation, which was being investigated by a grand jury studying a series of planned bankruptcies or "bust out" operations. The law firm also had represented Tashjian in an earlier tax matter and was representing him in connection with a current grand jury investigation of extortion in which he had been indicted. Appellant was sought both as a witness and as custodian of the corporate records in connection with the "bust out" investigation. He was represented by the same law firm.

Appellant filed a number of motions on May 25, 1978: to quash the subpoena, to stay for health reasons his appearance at the hearing noticed in the subpoena, and to restrain the government from contacting him or his wife other than after consultation with his attorney. On the same day the court denied these motions and granted a motion to compel the testimony of appellant, as well as a motion that appellant's lawyers be disqualified from further representing appellant because of a conflict of interest between their representation of appellant and of Tashjian.

We stayed these orders of the district court which compelled appellant's appearance both as a witness and as custodian of the corporate records and disqualified appellant's counsel. We expedited hearing and ordered simultaneous briefs, calling the parties' attention to cases dealing, inter alia, with appellate jurisdiction. Appellant relies on two of these cases, *Matter of Grand Jury Empaneled January 21, 1975*, 536 F.2d 1009 (3d Cir. 1976) and *In re Investigation Before April 1975 Grand Jury*, 174 U.S.App.D.C. 268, 531 F.2d 600 (1976).[1] The government has not contested our jurisdiction in this case, noting that post-indictment orders disqualifying counsel are appealable and citing the foregoing cases.[2] Despite the absence of adversarial contest, we have the obligation to satisfy ourselves as to our jurisdiction. We are unable to do so.

The austere formula of *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940) and *United States v. Ryan*, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971), conditioning review of orders to produce documents before a grand jury upon a contempt citation derives from the reasoning in *Alexander v. United States*, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906), that only the imminence of punishment of a non-complying witness sets a matter sufficiently apart and is of sufficient moment to justify the interruption in proceedings occasioned by immediate review.[3] In *Ryan*,

* Of the District of Rhode Island, sitting by designation.

1. The Fourth Circuit has also followed the Third and District of Columbia Circuits in concluding that the disqualification of an attorney in a grand jury proceeding is an appealable order. *See In re Investigation Before February, 1977, Lynchburg Grand Jury*, 563 F.2d 652, 655 (4th Cir. 1977).

2. No comment was forthcoming on our pre-argument reference to *United States v. Ryan*, 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971) (appellate review of grand jury subpoena is limited to review of contempt proceedings instituted against non-complying witness), al-

though government counsel at oral argument observed that the issue of appealability here was the same as that in *Ryan's* precursor, *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940).

3. The Court's precise language, quoted in *Cobbledick*, was " 'Let the court go farther, [than making an ordinary order] and punish the witness for contempt of its order,—then arrives a right of review; and this is adequate for his protection without unduly impeding the progress of the case. . . . This power to punish being exercised, the matter becomes personal to the witness and a judgment as to him. Prior to that the proceedings are interloc-

complying with a subpoena would have been more burdensome than in *Cobbledick*. But this was held of no consequence, the Court saying, "[W]e have consistently held that the necessity for expedition in the administration of the criminal law justifies putting one . . . to a choice between compliance . . . and resistance . . . with the concomitant possibility of an adjudication of contempt if his claims are rejected on appeal. . . . Only in the limited class of cases where denial of immediate review would render impossible any review whatsoever of an individual's claims have we allowed exceptions to this principle. . . . [R]espondent is free to refuse compliance and . . . in such event he may obtain full review of his claims before undertaking any burden of compliance with the subpoena." 402 U.S. 530, 533, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85.

This doctrine would appear to apply to this case. In 9 Moore's Federal Practice, 2d ed., 1975, ¶ 110.13[11], p. 192, the *Cobbledick* rule is said to "appear to bar not only appeals from orders compelling testimony or the production of documents or things before the grand jury but all appeals that would have the effect of interfering with proceedings of the grand jury, except, of course, appeals from judgments of contempt." There would seem to be no reason why appellant here, if he were determined to test the court's order of disqualification, could not simply refuse to testify on the ground that he had wrongfully been deprived of counsel of his choice.[4]

We confess that the concept of obtaining appellate review through the contempt route is a hard one. As Wright and Miller observe concerning discovery orders in 15 Federal Practice and Procedure, 1976, § 3914, p. 575, "The only discernible virtue for the present rule is that it in fact discourages most appeals. Nonetheless, several courts of appeals have expressly rejected the *Covey* decision [340 F.2d 993 (10th Cir. 1965)] in dismissing pre-contempt appeals from orders directing answers to discovery questions."[5] And there seems no sign of doctrinal erosion in recent pronouncements of the Supreme Court. *See, e. g., Coopers & Lybrand v. Cecil Livesay and Dorothy Livesay, Etc., et al.,* — U.S. —, — —, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); *United States v. MacDonald,* 435 U.S. 850, 854, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978); *cf. Maness v. Meyers,* 419 U.S. 449, 460–61, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975).

We therefore would feel bound to apply the *Cobbledick-Ryan* review-through-contempt doctrine to this appeal unless contrary authority clearly showed its inapplicability. We have failed to see any such clear showing. We are fully aware of the fact that now, after considerable backing and filling, the circuits which have dealt with post-indictment attorney disqualification motions and the appealability of orders granting or denying them, are generally agreed that both kinds of orders are appealable as collateral orders under *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The cases are collected at 15 Wright & Miller, Federal Practice and Procedure, 1976, § 3911, n.57, p. 490–91; 9 J. Moore's Federal Practice, 1977–78 Supplement, § 110.13[10], pp. 45–46. *See also Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 496 F.2d 800 (2d Cir. 1974).

The rationale for treating the orders as final is expressed in two Fifth Circuit cases. In *Tomlinson v. Florida Iron & Metal, Inc.,* 291 F.2d 333, 334 (5th Cir. 1961), the court held an order denying a motion for disqualification final where "harm resulting there-

---

utory in the original suit.' 201 U.S. at 121–22 [26 S.Ct. 356]." 309 U.S. at 327, 60 S.Ct. at 542.

**4.** This is thus not a situation where the order is directed at another than appellant, so that it might be unlikely that contempt would be risked to preserve appellant's rights. *See Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417,

62 L.Ed. 950 (1918); *but cf. DiBella v. United States,* 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962). *See also United States v. Doe,* 455 F.2d 753, 757 (1st Cir. 1972).

**5.** The treatise cites among other cases at this point our own opinion in *Grinnell Corp. v. Hackett,* 519 F.2d 595, 596–97 (1st Cir. 1975).

from is in the nature of the frustration of a public policy which cannot be avoided or mitigated by any appeal taken after the trial." By the same token, an order granting a motion to disqualify was held appealable since "[a]n order erroneously depriving a party of his chosen counsel during the course of the trial would . . . frustrate public policy in a way which a post trial appeal could not mitigate." *Draganescu v. First Nat'l Bank*, 502 F.2d 550, 551 n.1 (5th Cir. 1974). Or, as Wright & Miller summarize the thinking, appealability rests "on the ground that the rights to be represented by chosen counsel, or not to be opposed by disqualified counsel, are incapable of effective preservation after trial even if a second trial should be awarded." 15 Federal Practice & Procedure, § 3911, p. 490.

In practical terms it can easily be seen that this rationale is particularly forceful only in post-indictment situations. If a defendant has his attorney disqualified at trial he has little choice but to select new counsel, and undergo the distress of a trial with some less desirable replacement in this important personal and professional relationship. The defendant's only remedy would be a timely appeal, which at best could provide him a second trial with counsel of his own selection. But even victory at this second proceeding can hardly be said to compensate the defendant for the expense and rigors of the first trial, accentuated as they were by the replacement of his attorney and the loss of his right to counsel of his choice. The only alternative to this unfortunate scenario would be for the defendant to refuse to participate in the proceeding without counsel of his choice. This would almost certainly result in a short trial and the inevitable verdict of guilty.

Considering the possible penalty a defendant might be subject to on conviction, we would deem foolhardy the individual who would risk so much to establish that his counsel's disqualification was unjustified. In the case of the denial of a motion to disqualify opposing counsel, the burdens are not so onerous for the losing party, but they are still significant and there is no procedural mechanism short of interlocutory appeal which could avoid a flawed and wasteful trial.

These hazards are not present at the grand jury stage. A witness who feels aggrieved by an order disqualifying his chosen counsel may obtain expeditious review of the order by refusing to testify and by appealing a judgment of contempt. This is not an easy route.[6] But it does provide a quick and complete remedy for the witness. Moreover, if the disqualification of counsel is upheld, the penalty imposed upon the witness will be fair and proportional to the offense of disobeying a court order in a context in which the court is likely to understand that no disrespect to the court was intended. Clearly no risk comparable to a significant sentence for a felony conviction need be undertaken. Moreover, should the witness accept the disqualification and select new counsel,[7] he does so in a confidential proceeding that can at worst result in the beginning of a prosecution by indictment; the participation up to this point of unsatisfactory counsel as advisors of witnesses cannot frustrate public policy as pervasively as can their participation during an entire trial. It is true that the denial of a government motion to disqualify may well be without remedy but that is the case with most rulings adverse to the government in criminal proceedings.

**6.** In addition to the obvious risks involved in the contempt route the witness may find himself in the awkward position of not being able to obtain advice from counsel of his choice on the important decision of whether or not to risk contempt. To the extent that he has to secure new counsel for assistance on the contempt question itself, the witness will have had his right to counsel of his choice impaired. We do not consider this impairment insignificant but it does not compare with the difficulties facing

a defendant in the post-indictment stage whose counsel is disqualified, nor is it so weighty a concern that it permits the witness to escape from the requirements of *Ryan* and *Cobbledick*.

**7.** One positive aspect of applying the *Ryan* rule in this context is that it forces a witness to ponder seriously the desirability of continuing with counsel of his choice who may have a conflict of interest.

Notwithstanding these substantial differences between pre- and post-indictment rulings on motions to disqualify counsel—differences relating to the extent of frustration of public policy as well as to the available means for and timing of appeals from rulings—the cases relied on by appellant seem to assume that the two situations are so similar that the appealability of a post-indictment ruling is a compelling reason to hold appealable pre-indictment rulings.

In the earlier case, *In re Investigation Before April 1975 Grand Jury*, 174 U.S.App. D.C. 268, 273, 531 F.2d 600, 605 n.8 (1976), the post-indictment authorities are reviewed and the conclusion is announced that "it is our view that the factors justifying that conclusion [appealability of an order of disqualification] in the trial contest are equally applicable to grand jury proceedings." As we have noted, the factors present in the trial context are not present when a pre-indictment refusal to comply leads to a review of a contempt citation. The court's conclusion was reinforced by the observation that allowing such appeals wreaks less havoc with a grand jury, which can turn to other matters, than with the conduct of a trial.[8] The later case, *Matter of Grand Jury Empaneled January 21, 1975*, 536 F.2d 1009 (3d Cir. 1976), in addition to relying on the District of Columbia Circuit opinion, merely asserted, without noting the contempt route to review, that the order prohibiting an attorney from representing more than one witness was final since "important rights . . . would be irreparably lost if review were denied now." *Id.* at 1011. The opinion added the observation that the argument for appealability was stronger than in a *Cohen* situation, since there was no "case" to which the disqualification order might be deemed collateral. This would seem to be a true enough statement, but not an important consideration in deciding appealability in a grand jury context.

We are unable to see why the logic of the post-indictment disqualification cases applies to orders concerning representation of grand jury witnesses. We are equally unable to see why the logic of *Cobbledick* and *Ryan* does not apply. Since the other issues sought to be raised lack any independent basis of jurisdiction, *we dismiss this appeal for lack of appellate jurisdiction.*

---

**8.** This of course would be true of any appeal from orders refusing to quash subpoenas.