NO. 13-754

NORTH CAROLINA COURT OF APPEALS

Filed: 8 April 2014

In re: ACCUTANE LITIGATION

Orange County
No. 13 CVS 265

Appeal by Dr. Michael D. Kappelman from order entered 16 April 2013 by Judge Robert H. Hobgood in Orange County Superior Court. Heard in the Court of Appeals 8 January 2014.

> *Nelson Mullins Riley & Scarborough LLP, by Christopher J. Blake, Joseph S. Dowdy, and T. Carlton Younger, III, for Hoffman-LaRoche Inc., and Roche Laboratories, Inc.-appellees.*

> *Ashmead P. Pipkin for Dr. Michael D. Kappelman-appellant.*

STEELMAN, Judge.

Where the defendant in a New Jersey mass tort litigation subpoenas a North Carolina witness for a deposition, the North Carolina trial court's protective order was an interlocutory order. Where the witness failed to allege any substantial right that would be jeopardized absent immediate review, but instead speculates that if certain fact scenarios occur in the future his rights might be implicated, his appeal must be dismissed.

I. Factual and Procedural Background

In the early 1980s Hoffmann-LaRoche, Inc., began marketing Accutane, the brand name for the drug isotretinoin, which is used to treat severe acne. Beginning in 2003, lawsuits were filed alleging that the use of Accutane had caused inflammatory bowel disease. In May 2005, the New Jersey Supreme Court ordered that the litigation pertaining to Accutane be administered as a mass tort, and as of "July 2012, there [were] nearly 8000 cases listed on New Jersey's Accutane mass tort list." *Sager v. Hoffman-La Roche, Inc*., 2012 N.J. Super. Unpub. LEXIS 1885 *9 fn2, *petition for certification denied*, 213 N.J. 568, 65 A.3d 835 (2013).

Dr. Kappelman is an Assistant Professor on the faculty of the Medical School of the University of North Carolina at Chapel Hill, whose duties include treating patients, conducting research studies, and publishing the results of his studies. This is primarily in the field of pediatric gastroenterology. He is not a party in the Accutane litigation and has not consulted with any of the parties. However, Dr. Kappelman was a co-author of "A [Causal] Association between Isotretinoin and Inflammatory Bowel Disease Has Yet to Be Established," an article published in 2009 in The American Journal of Gastroenterology (TAJG). Dr. Kappelman discussed the article in a March 2010 interview

published in the Gastroenterology & Hepatology journal. He was also a co-author of "Isotretinoin Use and Risk of Inflammatory Bowel Disease: A Case Control Study," an article published in September of 2010 in TAJG. This article resulted in a letter to the editor by Hoffmann-LaRoche employees, published in TAJG in May 2011, which criticized the methodology described in the September 2010 article. This issue also contains a letter by Dr. Kappelman responding to the criticisms. Plaintiffs in the Accutane litigation have cited some of Dr. Kappelman's work in support of a causal link between Accutane and inflammatory bowel disease. When Hoffmann-LaRoche sought to introduce other writings by Dr. Kappelman to rebut plaintiffs' evidence, New Jersey trial judge Carol E. Higbee ruled that Hoffmann-LaRoche could not introduce this evidence in documentary form but would have to depose Dr. Kappelman.

Based upon a *subpoena ad testificandum* filed 15 February 2013 by the Superior Court of Atlantic County, New Jersey, the Clerk of the Superior Court of Orange County, North Carolina, issued a subpoena on 15 February 2013, for Dr. Kappelman to be deposed on 14 March 2013 in Chapel Hill. On 5 March 2013 Dr. Kappelman filed a motion to quash the subpoena and for a protective order. The motion was heard on 8 April 2013, and on 16 April 2013 the trial court entered a protective order barring

Hoffmann-LaRoche from deposing Dr. Kappelman as an "involuntary non-fact" witness, but stating that he could be deposed as an expert witness without violating the protective order. The order states in relevant part:[1]

> Applying a balancing test set forth in *Anker v. G.D. Searle & Co.*, 126 F.R.D. 515, 518 (M.D.N.C. 1989), the Court finds that Dr. Kappelman is not a party to this litigation; he is an independent researcher and has demonstrated that he is [an] involuntary non-fact witness who has substantially demonstrated that his deposition would result in undue hardship and would be substantially burdensome to him as an involuntary non-fact witness in the context of the defendants' mass tort litigation in New Jersey involving 7,700 pending claims; and, no party in that litigation has retained Dr. Kappelman as an expert. Therefore, Dr. Kappelman's motion for a protective order is granted with respect to future subpoenas to Dr. Kappelman as an involuntary non-fact witness.
>
> Notwithstanding this ruling, defendants may have subpoenas issued to Dr. Kappelman as an expert witness without violating this protective order, and Dr. Kappelman will be required to appear for a deposition if he is subpoenaed as an expert.

---

[1] As Dr. Kappelman notes, the trial court did not rule on his motion to quash the subpoena. At the time of the hearing on Dr. Kappelman's motion, the date set for his deposition had passed. Furthermore, a North Carolina trial court lacks authority to quash a subpoena issued by a New Jersey court. *See Capital Resources, LLC v. Chelda, Inc.*, __ N.C. App. __, __, 735 S.E.2d 203, 209 (2012) ("a superior court judge in this State does not have any authority over the courts of other states, and thus could not quash subpoenas issued by such courts") (citing *Irby v. Wilson*, 21 N.C. 568, 580 (1837)), *cert. denied*, __ N.C. __, 736 S.E.2d 191 (2013).

The parties agreed during the hearing that defendant had subpoenaed Dr. Kappelman as a fact witness; however, the order does not address whether Dr. Kappelman may be deposed as a fact witness, but only bars defendants from deposing Dr. Kappelman as "an involuntary non-fact witness." And, although the most common type of "non-fact witness" is an expert witness,[2] the order also states that the protective order would not bar Hoffmann-LaRoche from issuing a subpoena for Dr. Kappelman as an expert witness. As a result, the only legal effect of the protective order is to prevent defendants from deposing Dr. Kappelman as an involuntary non-fact lay witness. Dr. Kappelman argues in his response to Hoffmann-LaRoche's dismissal motion that the trial court's order is "muddled" and "self-contradictory." However, Dr. Kappelman did not file a motion seeking clarification of the order. *See Alston v. Fed. Express Corp.*, 200 N.C. App. 420, 423-24, 684

---

[2] The order does not explain what this term means. There appear to be no cases in North Carolina defining this term. A "non-fact" witness may be an expert, *see, Express One Int'l, Inc. v. Sochata*, No. 3-97 CV3121-M, 2001 U.S. Dist. LEXIS 25281, at *2 (N.D. Tex. 2 March 2001) (noting that the "five non-fact witnesses are traditional experts whose involvement is solely for litigation to give opinions in their specific areas of expertise"). However, in particular circumstances a person may testify as a non-fact lay witness, *see, e.g., Jones v Williams*, 557 So. 2d 262, 263, 266 (La. App. 4 Cir. 1990) (parking manager for defendant City of New Orleans and "plaintiff's only non-fact witness" testified regarding the City's customary practice regarding enforcement of parking regulations), *cert. denied*, 558 So. 2d 607, 1990 La. LEXIS 726 (La. 1990).

S.E.2d 705, 707 (2009) ("Pursuant to Rule 60(b)(6)'s 'grand reservoir of equitable power,' the trial court had jurisdiction to revisit its order so that its intentions could be made clear.") (quoting *In re Oxford Plastics v. Goodson*, 74 N.C. App. 256, 259, 328 S.E.2d 7, 9 (1985)).

Dr. Kappelman appeals.

## II. Hoffmann-LaRoche's Motion to Dismiss Appeal

On 23 July 2013 Hoffmann-LaRoche filed a motion seeking dismissal of Dr. Kappelman's appeal, arguing that Dr. Kappelman had appealed from an interlocutory order that did not affect a substantial right. We agree.

## A. Interlocutory Nature of Appeal

According to N.C. Gen. Stat. § 1A-1, Rule 54(a), a "judgment is either interlocutory or the final determination of the rights of the parties." "'An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy.'" *Hill v. StubHub, Inc.*, __ N.C. App. __, __, 727 S.E.2d 550, 553-54 (2012) (quoting *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950)), *disc. review denied*, 366 N.C. 424, 736 S.E.2d 757 (2013).

On appeal, Dr. Kappelman argues that we should treat the trial court's order as final based on his interpretation of the statement in the trial court's order that, notwithstanding the court's entry of a protective order, "defendants may have subpoenas issued to Dr. Kappelman as an expert witness without violating this protective order, and Dr. Kappelman will be required to appear for a deposition if he is subpoenaed as an expert." Dr. Kappelman interprets this as a ruling in which the trial court "unjustly compelled Dr. Kappelman to testify as an expert without compensation or limitations on the scope of the deposition." He contends that if Hoffmann-LaRoche issues a subpoena seeking to depose him as an expert witness, that he will not be permitted to raise any objections to the subpoena or the deposition and that the trial court's order "forecloses" his ability to challenge or seek a protective order, regardless of the scope of the deposition or his circumstances at the time. We disagree.

N.C. Gen. Stat. § 1A-1, Rule 26(c) provides in part that:

> Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the judge of the court in which the action is pending may make any order which justice requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, or undue burden or expense[.] . . .

In order to determine whether a party or deponent has shown "good cause" for an order protecting him "from unreasonable annoyance, embarrassment, oppression, or undue burden or expense," the trial court must consider the specific discovery sought and the factual circumstances of the party from whom discovery is sought. *See, e.g., Guessford v. Pa. Nat'l Mut. Cas. Ins. Co.*, 2013 U.S. Dist. LEXIS 71636, *9-10 (M.D.N.C., May 21, 2013) ("Rule 26(c)'s requirement of a showing of 'good cause' to support the issuance of a protective order . . . contemplates a particular and specific demonstration of fact") (quoting *Jones v. Circle K Stores*, 185 F.R.D. 223, 224 (M.D.N.C. 1999) (internal quotation omitted)), *partial summary judgment granted in part and denied in part on other grounds*, 2013 U.S. Dist. LEXIS 150070 (M.D.N.C. Oct. 18, 2013). Given that the trial court's order addressed only the type of testimony for which Dr. Kappelman might be deposed, and given that the trial court could not know in advance what specific circumstances might exist at the time of a future subpoena or what information Hoffmann-LaRoche might be seeking, we conclude that the order's statement that "Dr. Kappelman will be required to appear for a deposition if he is subpoenaed as an expert" is simply a reiteration of the first part of the same sentence which states that "defendants may have subpoenas issued to Dr. Kappelman as an expert witness

without violating this protective order." In other words, the trial court was merely emphasizing that if Hoffmann-LaRoche subpoenaed Dr. Kappelman as an expert witness, he could not argue that this violated the protective order. We hold, however, that in the event that Hoffmann-LaRoche seeks to depose Dr. Kappelman as an expert witness, he may seek a protective order under Rule 26(c), if appropriate.

We also reject Dr. Kappelman's contention that we should apply the reasoning of certain federal cases as a basis for treating this as an appeal from a final order. Dr. Kappelman cites several federal cases holding that, if a judge from a different district than the location of the trial enters an order <u>denying</u> discovery, the party seeking discovery may appeal, given that the party will not be able to raise the issue as part of an appeal from judgment in the case. Dr. Kappelman asserts, without citation to authority, that "[t]his rationale should apply equally to the appellant who is opposing discovery." However:

> The nonappealability of orders requiring the production of evidence from witnesses has long been established. In *Alexander v. United States*, 201 U.S. 117, 50 L. Ed. 686, 26 S. Ct. 356 (1906) . . . The Supreme Court held that the order directing the witnesses to testify and produce documents was interlocutory and could be challenged by the witnesses only upon an appeal from an adjudication of contempt. . . . [T]he

> Supreme Court has repeatedly held that an order denying a motion to quash, or an order compelling testimony or production of documents, is not final and, hence, is not appealable regardless of how the matter is raised.

*Micro Motion, Inc. v. Exac Corp.*, 876 F.2d 1574, 1576-77 (Fed. Cir. 1989), *appeal dismissed*, 899 F.2d 1227 (Fed. Cir. 1990). The *Micro Motion* court explained further:

> We are mindful of the harshness inherent in requiring a witness to place themself in contempt to create a final appealable decision. . . . However, it is all too certain that the consequences of recognizing a *right* to appeal all orders refusing to quash a subpoena, even where such an order 'ends' ancillary proceedings against a non-party, would be to "constitute the courts of appeals as second-stage motion courts reviewing pretrial applications of all non-party witnesses alleging some damage because of the litigation." Thus, the courts, with rare exceptions, have opted to require that the contempt route be followed.

*Micro Motion*, 876 F.2d at 1577-78 (quoting *Borden Co. v. Sylk*, 410 F.2d 843, 846 (3d Cir. 1969)). Dr. Kappelman does not distinguish cases such as this or cite any authority to the contrary, and we conclude that "this issue would no more be immediately appealable as a 'collateral matter' under the federal test for interlocutory appeals than it is under the substantial rights doctrine." *Frost v. Mazda Motor of Am., Inc.*, 353 N.C. 188, 195 fn2, 540 S.E.2d 324, 328-29 fn2 (2000) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 171-72, 40

L. Ed. 2d 732, 744-45, 94 S. Ct. 2140 (1974) (internal quotation omitted).

Dr. Kappelman also argues that the court's order was final, because it was "a final judgment as to [his] motion." However, "[a] final judgment is one which disposes of the cause as to <u>all the parties</u>, leaving nothing to be judicially determined between them in the trial court." *Veazey,* 231 N.C. at 361-62, 57 S.E.2d at 381 (citation omitted) (emphasis added). The trial court's order addressed only the ancillary issue of Dr. Kappelman's entitlement to a protective order limiting the scope of deposition, and clearly did not resolve the case "as to all the parties" involved in the litigation pertaining to Accutane. In addition, all of Dr. Kappelman's appellate arguments are premised on the likelihood of future litigation in North Carolina. We conclude that Dr. Kappelman has attempted to appeal from an interlocutory order.

## B. Substantial Right

"As a general rule, interlocutory discovery orders are not immediately appealable." *K2 Asia Ventures v. Trota*, 209 N.C. App. 716, 718-19, 708 S.E.2d 106, 108 (2011) (citing *Dworsky v. Insurance Co.*, 49 N.C. App. 446, 447, 271 S.E.2d 522, 523 (1980) ("orders denying or allowing discovery are not appealable since they are interlocutory and do not affect a substantial right

which would be lost if the ruling were not reviewed before final judgment."). However, N.C. Gen. Stat. § 7A-27(b)(3)(a) permits immediate appeal from an interlocutory order that "[a]ffects a substantial right." *See also* § N.C. Gen. Stat. § 1-277(a) ("An appeal may be taken from every judicial order or determination of a judge . . . which affects a substantial right[.]").

"'Essentially a two-part test has developed — the right itself must be substantial and the deprivation of that substantial right must potentially work injury . . . if not corrected before appeal from final judgment.'" *Braun v. Trust Dev. Group, LLC*, 213 N.C. App. 606, 609, 713 S.E.2d 528, 530 (2011) (quoting *Goldston v. American Motors Corp.*, 326 N.C. 723, 726, 392 S.E.2d 735, 736 (1990)). "A substantial right is 'one which will clearly be lost or irremediably adversely affected if the order is not reviewable before final judgment.' . . . Our courts generally have taken a restrictive view of the substantial right exception. . . . The burden is on the appellant to establish that a substantial right will be affected unless he is allowed immediate appeal from an interlocutory order." *Embler v. Embler*, 143 N.C. App. 162, 165-66, 545 S.E.2d 259, 262 (2001) (quoting *Turner v. Norfolk S. Corp.*, 137 N.C. App. 138, 142, 526 S.E.2d 666, 670 (2000) (internal quotation omitted), and citing *Blackwelder v. Dept. of Human Resources*, 60

N.C. App. 331, 335, 299 S.E.2d 777, 780 (1983), and *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 444 S.E.2d 252 (1994)).

Dr. Kappelman identifies two "substantial rights" that he contends are implicated by the trial court's order: his alleged right under the federal and state constitutions to be paid for expert testimony, and a right, based on Dr. Kappelman's contention that he qualifies as a "journalist," to refuse to divulge information that is protected by journalistic privilege. Dr. Kappelman speculates that Hoffmann-LaRoche may subpoena him as an expert witness in the future; that if this occurs, Hoffmann-LaRoche may be unwilling to pay him for his time,[3] or Hoffmann-LaRoche might seek information that Dr. Kappelman believes is privileged based on his assertion that he is a "journalist." It is undisputed that neither of these scenarios has yet occurred. Therefore, any opinion we might offer as to

---

[3] Dr. Kappelman does not discuss N.C. Gen. Stat. § 7A-305(d), which "sets out the costs that the trial court is 'required to assess.' Under . . . N.C. Gen. Stat. § 7A-305(d)(11), a trial court is required to assess costs for '[r]easonable and necessary fees of expert witnesses solely for actual time spent providing testimony at trial, deposition, or other proceedings.'" *Springs v. City of Charlotte*, 209 N.C. App. 271, 282, 704 S.E.2d 319, 327 (2011) (quoting *Lord v. Customized Consulting Specialty, Inc.*, 164 N.C. App. 730, 734, 596 S.E.2d 891, 895 (2004). "However, a trial court may tax expert witness fees as costs only when that witness is under subpoena." *Peters v. Pennington*, 210 N.C. App. 1, 26, 707 S.E.2d 724, 741 (2011) (citing *Jarrell v. Charlotte-Mecklenburg Hosp. Auth.*, 206 N.C. App. 559, 563, 698 S.E.2d 190, 193 (2010)).

(1) Dr. Kappelman's right, if any, to a particular fee for his testimony; (2) whether Dr. Kappelman qualifies as a "journalist" or; (3) whether specific information is subject to a journalist's privilege would be entirely hypothetical and speculative. It is well-established that "'courts have no jurisdiction to determine matters purely speculative, enter anticipatory judgments, declare social status, deal with theoretical problems, give advisory opinions, answer moot questions, adjudicate academic matters, provide for contingencies which may hereafter rise, or give abstract opinions.'" *Baxter v. Jones*, 283 N.C. 327, 332, 196 S.E.2d 193, 196 (1973) (quoting *Little v. Trust Co.,* 252 N.C. 229, 243, 113 S.E. 2d 689, 700 (1960)).

We conclude that the trial court's order was interlocutory, that Dr. Kappelman has not identified any substantial right that would be jeopardized by delay of appeal, and that the issues raised by Dr. Kappelman all pertain to possible ramifications of a hypothetical subpoena that might or might not ever be issued, and thus do not present issues that are ripe for review. For these reasons, we conclude that Dr. Kappelman's appeal must be dismissed.

DISMISSED.

Judges STEPHENS and DAVIS concur.